## DITTMAR v. SARGENT et al.

(Circuit Court of Appeals, Second Circuit. November 16, 1921.)

### No. 23.

1. **Shipping ☞54—Towage ☞11(8)—Duty of master to examine barge, and neither charterer nor tug were liable for his failure.**

   It was the duty of a captain of a chartered barge, as a part of the husbandry thereof, to examine her at the end of a trip through a channel broken through ice 30 feet wide, before leaving her, and neither the charterer nor the tug owner was chargeable with the loss of the barge, which sunk by reason of slight injuries about even with the load water line.

2. **Shipping ☞54—Ice damages to barge held reasonable wear and tear.**

   A man who charters his vessel for harbor navigation in New York in the winter time must regard careful proper navigation through ice fields as a use reasonably to be expected, and the damage caused by knocks from floating ice is chargeable to reasonable wear and tear, in the absence of unusual conditions and no negligence in the towing.

Appeal from the District Court of the United States for the Southern District of New York.

Libel in admiralty by William D. Dittmar against Donald J. Sargent, with the Red Star Towing & Transportation Company, impleaded. From a decree dismissing the libel, libelant appeals. Affirmed.

Macklin, Brown & Purdy, of New York City (Pierre M. Brown, of New York City, of counsel), for appellant.

Thomas Cooper Byrnes, of New York City, for appellee Sargent.

Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark, of New York City, of counsel), for appellee Red Star Towing & Transportation Co.

Before ROGERS, MANTON and MACK, Circuit Judges.

MACK, Circuit Judge. Appeal by libelant, the barge owner, from a decree dismissing his libel, both as to the respondent charterer and

the impleaded towing company, which under engagement with the charterer, had towed her from New York to Stamford, Conn.  The coal barge was chartered December 5, 1917, under the usual demise charter with the captain's services for an indefinite time for a trip to Stamford, Conn.  She was loaded at Port Reading and delivered at Newtown Creek.  There she was taken in tow, on January 16, 1918, by the towing company's tug.  On January 18th she was towed to a safe place at Wilson's Point, and remained there with other barges eight days, as Stamford Harbor was frozen up.  On the 26th, after the tugs had broken a channel through, over 30 feet wide and half a mile long, they again took her in tow and landed her the same morning at Stamford.  Then, at about 11 a. m., the captain, without having examined her, left the barge.  If he had inspected her before leaving, he would have discovered that two planks in her port bow, about even with the load water line, had been broken in passing through this channel.  Due to his failure to discover this, and to take measures to avoid sinking, she sank at high tide during the night.  The captain returned the following day.

[1] We concur in the view of the trial judge that it was "the master's duty, a part of the husbandry of the boat," to examine her, and that all of the damage, except the slight repairs due to the initial punch, was due to his negligence in failing to perform that duty.  As to the initial damage, concededly the towing was carefully done, no negligence can be charged either against the tug owner or the charterer, unless it be negligence to tow with the utmost care or to permit the towing under all the then prevailing circumstances.

[2] This barge was demised in the winter time; the parties knew that it would be used when, in all probability, the ice conditions would be more or less severe.  And even though, as Judge Hough found, the tug owner refused to tow unless, as between them, the charterer assumed the risk, the conditions that gave rise to these negotiations were not so dangerous or unusual as, in our judgment, to compel the continuous tying up of the chartered boat, and therefore to charge either charterer or tug owner with negligence solely because the barge was then towed to its destination.

We concur in the statement of the trial judge that—

"This view of the matter makes ice damages under the circumstances shown reasonable wear and tear.  * * *  A man who charters his vessel for harbor navigation in New York and in the winter time must regard careful, proper navigation through ice fields as a use reasonably to be expected."

Not that ice damage under all circumstances is reasonable were and tear; not that navigation through all ice fields, unbroken, or even broken up, is a use reasonably to be expected.  But in the absence of unusual conditions, making the situation more than ordinarily hazardous, the barge demised for winter work may be towed in a broken-up ice field; if there be no negligence in the towing, damage caused by knocks from floating ice is chargeable to reasonable wear and tear.

The decree is affirmed.