## CLEARY BROS., Inc., v. PORT READING R. CO.

Circuit Court of Appeals, Second Circuit. December 3, 1928.

No. 47.

Foley & Martin, of New York City (James A. Martin and Edward E. Elder, both of New York City, of counsel), for appellant Cleary Bros., Inc.

William F. Purdy, of New York City (George V. A. McCloskey, of New York City, of counsel), for Pittsburgh Fuel Co. and other libelants-appellants.

Macklin, Brown, Lenahan & Speer, of New York City (Horace L. Cheyney, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above). It is the duty of a tugmaster, who adds his tow to a moored flotilla, to inspect the lines with reference to their ability to bear the added weight under conditions of tide and weather which are

to be anticipated. Penn. R. Co. v. James McWilliams Towing Line, 277 F. 798 (C. C. A. 2); McWilliams Bros. v. Davis, 285 F. 312 (C. C. A. 2). But a tug is not an insurer of the safe mooring of the flotilla, and, if the boats, or some of them, should break adrift through some latent defect or unexpected condition, which reasonable foresight and care would not have anticipated, the tug will not be responsible. McWilliams v. Phila. & Reading Ry. Co., 203 F. 859 (C. C. A. 2). It was thought by the lower court that the duty of inspection is limited to the lines, and does not include inspection of cleats and mooring posts—at least in the case of loaded barges, where examination below decks would be impracticable. This interesting question we do not find it necessary to pass upon.

The negligence charged is not only a failure to inspect the fastenings, but also is the hanging of the 3 barges across the bows of the boats at the north end of the string of 14. It is argued that they were thus put in an exposed position, where the pressure of the ebb tide would be heavier than if they had been placed in line at the end of the string. According to the testimony there is an eddy off shore at Ninety-Sixth street on the ebb tide. It does not appear self-evident to us that the strain on boats near the pier would be any greater with 2 boats hung thwartwise off the bows of a string of 15 than it would be if they were placed in line and the string lengthened to 17. There is no word of testimony that they were placed in an improper or unusual manner, unless it may be implied from the statement of the Sheridan's bargee that in his opinion "they held heavier out there." Nor is there any testimony that 17 is an unusual number to moor at Ninety-Sixth street. Indeed, one witness says he has seen a greater number there, though this amounts to little, as he does not tell how or under what conditions they were moored.

There is no evidence as to the precise cause of the going adrift. Since only 15 out of 17 boats went adrift, it is to be inferred that the parting occurred between the second and third boats from the pier. The names of those boats were known, and there is no suggestion that their bargemen were not available as witnesses. What gave way, whether lines, cleats, or mooring posts, is not shown. In short, the libelant relies upon the fact that the boats went adrift to prove that the tugmaster acted negligently in adding the last 3 barges to the 14 already there, and that such negligence caused the going adrift under the pressure of the ebb-tide eddy. On

the one side, it is argued that, if what gave way was some latently defective line, cleat, or post, which reasonable inspection would not have discovered, then the mere fact that the flotilla went adrift would have no tendency to prove negligence on the part of the tugmaster, either in the make-up of the flotilla or in the inspection of its moorings. On the other, it is urged that at least a prima facie case of fault was made out, which required explanation by the respondent, if responsibility is to be avoided. We are not required to choose between these conflicting arguments. Assuming that the tug's conduct was negligent, it remains to consider whether damages ensued for which the respondent can be held responsible.

A wrongdoer is not required to respond for all the consequences of his tort, but only for such as are said, in common phrase, to result proximately therefrom. No damages were suffered by the barges in drifting away from Ninety-Sixth street. They were brought to the dock at Mill Rock, where, so far as appears, they could have lain in safety, if sufficiently moored. There is absolutely no evidence as to why they broke adrift again. One end of the flotilla was placed against the dock; the other was outside of a mud scow already moored to the dock. Two new lines were run across the scow, one from the stern of the Cleary, the other from the stern of the Sheridan, and were made fast to the dock. At the other end of the flotilla at least three new lines were run from barges to the dock. Newnon, of the fireboat, says that eight or nine lines were put out altogether; that more could have been used, but he thought those which were out were sufficient. Apparently, for the most part, the bargees left the matter of mooring to the crew of the fireboat, although Tarbell, a fireman, says the captain of the fireboat asked the bargemen if they were securely tied and got the required information.

The position at Mill Rock is much exposed to the tides, but there is no evidence that 15 barges could not be safely moored there, if sufficient fasts were used, nor that the crew of the fireboat and the bargees had to act hurriedly in an emergency, and did the best they could with available equipment. What caused the barges to go adrift is not shown. Whether the lines broke because insufficient in number to stand the strain, or slipped off posts or cleats because improperly made fast, or became frayed by rubbing against the dock or the scow because of failure of the bargees to tend them on the change of tide, does not appear. If we are to infer

negligence on the part of the tug because of the unexplained going adrift at Ninety-Sixth street, there is equal reason to infer negligence on the part of those who did the mooring at Mill Rock because of the unexplained going adrift there.

The libelant does not seriously contend that the respondent should be held if those who did the mooring at Mill Rock were negligent. It is true that the damages suffered would not have happened, but for the respondent's negligence at Ninety-Sixth street, if negligence there be assumed. That negligence is, therefore, a cause of the damage complained of. But so also is the negligence of those who did the mooring at Mill Rock, if negligence there be assumed. Ordinarily the first wrongdoer is not held responsible for damages which result both from his own negligence and that of a subsequently intervening third party, unless the latter's negligence was such as the first wrongdoer might reasonably have expected to occur. See The Panther, 5 F.(2d) 64 (C. C. A. 2); The George H. Jones, 27 F.(2d) 665, 668 (C. C. A. 2); The M. E. Luckenbach, 200 F. 630 (D. C. E. D. N. Y.), affirmed 214 F. 571 (C. C. A. 2). This rule is commonly expressed in terms of causation—the second wrongdoer's negligence being called the proximate cause —though really its source is to be found in the courts' conceptions of policy and fairness, rather than in any factual relation of causation. See Green, Proximate Cause, § 4.

The libelant does contend, however, that we should not assume negligence on the part of those who did the second mooring, and that no negligence by them was proved. If their negligence is not to be inferred from the unexplained breaking adrift, at best the issue was left uncertain. It appears that the flotilla came without damage to a place where it could have lain safely, if securely moored by those whose duty it was to moor it; that it later broke away, either through negligent mooring on their part, or through some latent defect or other cause which care by them would not have avoided. If their supervening negligence contributed to the breaking adrift, respondent would not be held responsible. The Panther, supra. If there was no supervening negligence, respondent might be so held. The Daniel McAllister, 258 F. 549, 553 (C. C. A. 2). Libelant has the burden of proof, and must show that respondent's negligence was not only one cause, but the proximate cause, of the damage complained of. Brigham v. Cornell Steamboat Co., 18 F.(2d) 92 (C. C. A. 2). The proof leaves it quite as probable that the breaking

away from Mill Rock was directly attributable to some supervening negligence of the fireboat's crew or the bargees, as that it was due to some latent defect or condition for which they would not be responsible. Consequently, the libelant has failed to establish that respondent's negligence at Ninety-Sixth street was "the proximate cause" of the damage. In other words, libelant's proof has left it uncertain whether respondent or third parties ought to be made responsible for the damages suffered by libelant.

Dismissal of the libel was therefore correct, and the decree must be affirmed.