## THE BARTLE DALY.

## DALY v. 1,106 TONS OF COAL.
### No. 281.

Circuit Court of Appeals, Second Circuit.
May 9, 1932.

Single & Hill, of New York City, for appellant.

Alexander, Ash & Jones, of New York City (Edward Ash and Lawson R. Jones, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The claimant-appellee, Burns Bros., was the consignee of 1,106 tons of coal laden on libelant's barge Bartle Daly. A tug brought the Bartle Daly to the dock of Burns Bros. at 136th street, East River, at 6 p. m. on March 30, 1926, and placed her outside three other barges. The barge Burns No. 9 was moored to the bulkhead and outside her lay the barge Duffy, and outside the latter, the Junior. The Bartle Daly was made fast to the Junior, thus becoming the outside barge of four barges lying abreast. Her bargee thereafter went to his cabin to sleep. At about midnight, the barge Daly Boys, belonging to the libelant, arrived at the dock and was made fast to and abreast of the Bartle Daly. The tide was then slack high water, which tended to set the five barges toward the dock. But a strong ebb tide began to run between 2 and 3 o'clock the next morning. This put such a strain on the lines which held the inside barge Burns No. 9 to the dock that those lines parted and the five barges, still remaining fastened together, broke away from the bulkhead, were carried out into the river, and finally fetched up on the rocks in Hell Gate. Neither Bartle Daly nor Daly Boys had any lines out to the bulkhead; each was only made fast to the barge next her. Libelant incurred expenses in salving the Bartle Daly and her cargo, a portion of which he seeks to recover in this suit by way of general average.

The trial court dismissed the libel on the ground that the barges Bartle Daly and Daly Boys, each of which belonged to libelant Bartle Daly, failed to put out proper lines and that the owner was accordingly guilty of negligence which defeated his claim for general average under the doctrine of The Irrawaddy, 171 U. S. 187, 18 S. Ct. 831, 43 L. Ed. 130.

The libelant-appellant contends that neither the Bartle Daly nor the Daly Boys was guilty of any negligence, and that for this reason the owner of the Bartle Daly can recover by way of general average his share of the expenses incurred for salvage of her cargo.

In a suit on behalf of the barges Bartle Daly and Daly Boys to recover against the Tracy Towing Line, which owned the tug that placed the Daly Boys on the end of the flotilla, we held that the Towing Line was liable for the damage to the barges arising from this accident. The Bartle Daly (C. C. A.) 45 F.(2d) 605. The question, whether the owner of Daly Boys was at fault because his bargee failed to see that the lines of the inside barge were insufficient to bear the added weight of the Daly Boys and neglected to have additional lines put out, was not raised before us then. The negligence of the tug was conceded, and the only matter litigated was whether its negligence caused the damage or whether the proximate cause was the failure of the bargees to put out anchors. Upon that record we found the tug solely liable because, had anchors been used, they would not have held, as the river bottom was rocky. But though the tug was liable for leaving the barge Daly Boys at the end of

the flotilla without making sure that there were lines on the inside barge sufficient to bear her added weight, the libelant, who is the owner of the Daly Boys, might be regarded as having contributed to the accident, if the inner fasts of Burns No. 9 were not sufficient and the bargee of the Daly Boys could have relieved the strain by putting out shore lines and failed to do this. In Osterhoudt v. Federal Sugar Refining Co., 22 F.(2d) 475, we said that when a barge moors outside of another, she is bound not to overcharge the fasts of the first and if she does she is liable. We also said that she is under a duty to acquaint herself with the size, condition, and number of the lines to the pier. Some of the language of our opinion in that case might be thought to lay a higher duty on the owner of a barge than that imposed in The Mary Ethel (D. C.) 290 F. 458, affirmed (C. C. A.) 5 F.(2d) 1013. Under the doctrine of The Mary Ethel, a bargee is justified in assuming that the directions of a tugmaster as to how and where to moor his vessel may be safely followed unless conditions arise after the mooring which indicate some new danger that the tug could not foresee when it left him at his berth. The bargee is bound to make fast his lines properly and to watch them, but the determination of the number and location of the lines required to hold a flotilla against the added weight of a barge is a matter resting in the nautical skill of the tugmaster.

■ If the tugmaster neglects to see to it that a barge which he adds to a flotilla is so moored as not to overburden the fasts of the inside barges, the owner of the tug, and not the owner of the barge, is at fault. Such is the purport of Cleary Bros. v. Port Reading R. Co. (C. C. A.) 29 F.(2d) 495, and McWilliams Bros. v. Davis (C. C. A.) 285 F. 312, where the suits were by the owner of the barge against the owner of the tug. If there were an equal duty upon the owner of a barge and the owner of her tug to see that the fasts of the inside vessels were sufficient to withstand her added weight, damages would necessarily have been divided between barge and tug in suits where a bargee sought to recover from her tug for injuries resulting from the breaking away of the flotilla under the added strain. But in such cases the tug seems to have been held liable to her barge for the full damages.

In Osterhoudt v. Federal Sugar Refining Co. (C. C. A.) 22 F.(2d) 475, the situation was quite different from that here. The barges there had lain in a flotilla for about two weeks. The fasts of the inside barge were unsound and a line of the outside barge which had been run to the pier to lessen the strain was improperly bent so that it pulled off its cleat. The ice in the river which had been solid was broken up by a tug that entered the slip so that the ice and flood tide coming against the barges caused the lines of the inside barge to part and the shore line of the outside barge to slip off. It not only did not appear that any tug had placed the barges where they were at the time they broke away and damaged the barge of Osterhoudt, but new and dangerous conditions of ice and tide arose after they had lain in their berth in safety for two weeks. Aside from any general duty of barges they could hardly be free from liability where one of them had used unsound and frayed lines and the other had a line so ill bent that it slipped off its cleat as soon as it was subjected to an unusual strain.

■ We hold that the bargee of the Daly Boys was justified in relying on the tug for instructions as to whether the fasts of Burns No. 9 were sufficient to hold the flotilla and that his owner was not at fault for failure to put out shore lines unless something arose which could not be foreseen at the time the Daly Boys was berthed that indicated a new danger.

The decree is reversed, with directions to enter a decree for the libelant.