**SINRAM BROS., Inc., v. READING CO.**

**No. A–14921.**

District Court, E. D. New York.

Feb. 5, 1937.

Barber, Matters, Gay & Vander Clute, of New York City (Carl F. Vander Clute, of New York City, of counsel), for libelant.

Macklin, Brown, Lenahan & Speer, of New York City (Paul Speer, of New York City, of counsel), for respondent.

GALSTON, District Judge.

On January 29, 1936, following a well-known usage or custom in harbor towage, the barge Sterling, then lying at Ninety-Sixth street, was reported light to the Reading Company. The Reading Company's tug took the barge at Ninety-Sixth street, East River, and towed it to the respondent's stakeboat in upper New York Bay. From the stakeboat the barge was taken by another of the respondent's tugs on hawsers to Port Reading and tied to the light stakes, arriving at Port Reading at about 2 o'clock in the afternoon of January 30.

According to Christofen, master of the barge, upon the fall of the tide the Sterling rested upon a submerged obstruction which subsequently proved to be a cake of ice or an accumulation of ice. He says that the respondent's tug Ashbourne was in and about the tow in the afternoon getting barges out and shifting them. On the next high water the Sterling floated, and at about 2:30 in the afternoon of January 31 the respondent's tug Wyomissing took the Sterling in tow to the loading dock. The foreman at the loading dock ordered the Wyomissing to take her across the slip, and she was subsequently towed to drydock on February 1, and found damaged.

The libelant contends that the respondent owed the barge Sterling the duties of a bailee. The respondent, on the other hand, urges that the arrangement made in this case constituted only an order to tow the boat light to Port Reading, and that some new agreement had then to be entered into before there could be set up a contract to tow the boat back to New York. It seems to me that the distinction sought to be made is very tenuous indeed. Both parties knew at the time that the barge Sterling was reported light at Ninety-Sixth street; that the services of respondent's tug required that the barge was to be taken for loading. Tying up at the light stakeboat was but one element in the performance of the service and does not tend to reduce in any respect the duty which the respondent owed and the obligation which rested upon it. The barge was without motive power and was wholly dependent upon the respondent. There were not two arrangements made. There was but one contract of towage. It would seem, therefore, that the rule in Doherty v. Pennsylvania Railroad Company (C.C.A.) 269 F. 959, 962, is controlling herein. It was there said: "In the ordinary contract of towage, a tug is neither a common carrier nor an insurer. Therefore the highest possible degree of skill and care is not required. But the owners of a tug are bailees for hire. Bust v. Cornell Steam-Boat Co. (C.C.) 24 F. 188; The

D. Newcomb (D.C.) 16 F. 274; The Merrimac, 17 Fed.Cas. 126, No. 9,478; The Princeton, 19 Fed.Cas. 1342, No. 11,433a, affirmed in 19 Fed.Cas. 1344, No. 11,434. As such they must exercise reasonable skill, care, and diligence in all that relates to the work until it is accomplished. Eastern Transportation Line v. Hope, 95 U.S. 297, 24 L.Ed. 477; The Margaret v. Bliss, 94 U.S. 494, 24 L.Ed. 146; The Printer, 164 F. 314, 90 C.C.A. 246. In the instant case, as the respondent was under contract of bailment to take the barges to South Amboy, to load them there with coal, and to return them so loaded to New York, it is evident that the contract did not end when the boats were moored at South Amboy. The duty to exercise reasonable skill, care, and diligence continued as long as the barges were in the respondent's possession, and the services contracted for remained unperformed."

Conceding, then, the legal duty which the respondent owed was that of bailee, there remains the important matter as to whether the damage that the barge received was owing to the negligence of the Reading Company.

 It was stipulated at the trial that there was considerable ice in the harbor and that ice conditions had existed for some days prior to the towage and that those conditions were known to the libelant. It follows that any risk arising from those circumstances was assumed by the libelant.

The evidence disclosed that the mooring at Port Reading was entirely proper. There is no proof that any one connected with the Reading Company had knowledge that the barge was resting on ice until the morning of January 31st. Proof, too, appears to me to show that as soon thereafter as the tide made it possible to move the barge without drawing her along the bottom or sinking her, the Reading Company made all adequate and necessary effort to shift the barge. Even though the position of the barge at the light stakes during the night of January 30th or prior thereto led the captain of the barge to believe that the stern of his boat must be lying upon ice at the time that the tide had run out, and the stern seemed to lift up and the bow to go down, he took no soundings and made no effort to find out whether ice was under the bottom of his boat; nor did he communicate his belief to any one connected with the Reading Company. On the contrary, in talking to those on the steam tug Wyomissing he merely inquired as to whether they had any order to take him in for loading. Such too was the substance of his talk with those on board the steam tug Ashbourne. Christofen first made the request to be shifted on the morning of January 31st when the tide was low. Certainly at that time it was impossible to shift the boat without doing her damage.

The Reading Company cannot be charged with failing to give assistance when aid was requested. The view taken in Dittmar v. Sargent (C.C.A.) 277 F. 237, forces the conclusion here also that the damage sustained by the barge arose from ice conditions and in consequence cannot be attributed to any negligent act of the respondent.

The libel must be dismissed.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.