## THE CEDAR CLIFF.

### RICE v. SCHIAVONE-BONOMO CORPORATION.

### No. 347.

Circuit Court of Appeals, Second Circuit.

June 13, 1945.

Bigham, Englar, Jones & Houston, of New York City (Andrew J. McElhinney, of New York City, of counsel), for appellant.

Macklin, Brown, Lenahan & Speer, of New York City (Gerald J. McKernan, of New York City, of counsel), for appellee.

Before SWAN, CHASE and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This is a suit by the owner of a scow to recover from the charterer for damage done to the scow by some unknown vessel which collided with it while it lay moored to a dock in the East River. The appeal presents the question whether the undisputed evidentiary facts as found by the trial court justify the court's conclusion that the damage was caused by the charterer's negligence in mooring the scow with its bow projecting some 20 feet beyond the end of the dock.

On December 26, 1939 the parties entered into the usual form of harbor charter for an indefinite term at an agreed daily rate of hire. In a seaworthy condition and manned by an experienced captain the scow was delivered to the charterer at the Metropolitan Avenue Dock, Brooklyn, N. Y., for the purpose of being laden with a cargo of scrap iron. The charterer placed the scow on the south side of the dock with her bow extending into the East River about 20 feet beyond the end of the dock. Another scow lay inshore of her and the combined length of both scows was approximately 230 feet. The length of the dock is 290 feet but the 60 or 65 feet nearest the shore bulkhead can not be used to moor a loaded or partly loaded scow on account of shallow water. On the night of December 28th the scow captain shifted his boat by hand further into the slip so that her bow was nearly even with the river end of the dock. The next day the charterer's employees shifted her back to her former position, and the charterer's foreman admonished the scow captain not to change her position. By Saturday, December 30th about 350 tons of scrap iron had been loaded and the scow lay in the same position with her bow extending beyond the dock end about 20 feet. That evening about 5 p.m. the scow captain placed a light on his boat four or five feet back from the bow on the starboard side and another light somewhat further back on the corner of the deck load of scrap on the scow's port side. There was no other light at or near the river end of the dock. The captain then went ashore and when he returned about 8 p.m. he found the scow damaged on both the port and starboard sides forward. The damage resulted from a collision between the scow and some vessel passing up the river near the pier ends. The damage on the port side was about 17 feet aft of the bow and on the starboard side about 24 feet aft of the bow, indicating that the scow had received a blow on her port side which swung her somewhat around and against the dock on her starboard side. The trial judge found that by placing the scow so that her bow extended about 20 feet beyond the pier end, at night, and admonishing her captain not to change her position the charterer unnecessarily exposed her to the hazard of collision with some vessel using the river, and that the unnecessary hazard could have been easily avoided by the exercise of due care by the charterer's employees. As a conclusion of law he held that "the sole cause" of the damage to the scow was negligence on the part of the appellant's agents.

In our opinion this decision imposes too severe a standard of care upon

the charterer, who is not an insurer but liable only for failure to use reasonable, i. e. ordinary, care with respect to the demised vessel. White v. Schoonmaker-Connors Co., 3 Cir., 265 F. 465, 466; Alpine Forwarding Co. v. Pennsylvania R. Co., 2 Cir., 60 F.2d 734, 735, certiorari denied 287 U.S. 647, 53 S.Ct. 93, 77 L.Ed. 559; The Roslyn, 2 Cir., 93 F.2d 278, 280. It is common practice in and around New York harbor for small vessels, particularly scows and barges, to be tied up at the end of a pier or moored alongside with the bow or stern projecting a few feet beyond the pier end. In numerous cases the owner of a boat so moored has been exonerated from negligence contributing to the collision when the moored vessel was struck by a vessel navigating too close to the pier ends. The Canima, C.C.S.D.N.Y., 32 F. 302; The Mary Powell, C.C.S.D.N.Y., 36 F. 598; The City of Everitt, 1927 A.M.C. 711 (D.C.S.D. N.Y.); The Crown of Galicia, 2 Cir., 232 F. 305; Cornell Steamboat Co. v. New York Central No. 15, 1933 A.M.C. 621, affirmed, 2 Cir., 69 F.2d 1001; The Buffalo, 1933 A.M.C. 1506, aff'd sub nom. Clyde-Mallory Lines v. Delaware, Lackawanna & Western R. Co., 2 Cir., 75 F.2d 1008. If it is not negligent for an owner to moor a boat with its bow projecting a few feet into a broad channel, we do not see how it can be negligent for a charterer so to moor it. In Wright & Cobb Lighterage Co. v. New England R. Co., D.C., 189 F. 809, 813, affirmed, 2 Cir., 204 F. 762, the charterer of a boat damaged by collision while moored across the end of a pier, was exonerated. Nor do we see anything in the findings of fact to differentiate the case at bar from the authorities above cited. It is true that when the day's loading was done the charterer could have shifted the scow so that its bow would have been nearly even with the end of the dock and thereby the risk of its being hit by a vessel passing at night would to some extent have been decreased; but in some of the cited cases it is likewise true that the boat could have been given a safer berth and that the collision occurred at night or in dense fog. As already noted, a charterer is not an insurer; pro hac vice he is the owner and is privileged to use the demised boat in any way which the owner might reasonably do. There is nothing to indicate that the charterer should have foreseen any serious danger of injury by reason of letting the bow extend only 20 feet into a channel 1850 feet wide. Hence we think there was no negligence in so doing nor in forbidding the scow captain to shift it.

Moreover, we cannot accept the conclusion that the position of the scow was "the sole cause", or even a contributing cause of the collision; it was but a condition precedent; see The Canima, C.C. S.D.N.Y., 32 F. 302, 304; The Perseverance, 2 Cir., 63 F.2d 788, 790. The collision was solely due to the negligence of the colliding vessel which was either close shaving the pier ends or out of control by her navigators. The scow had lights near the bow on port and starboard and either was or should have been seen by the moving craft. In either case the latter's negligence was the sole cause of the damage suffered by the scow. Accordingly the decree should be reversed and the libel dismissed. It is so ordered.