**HARRIS v. THE CECIL N. BEAN et al.**
No. 222, Docket 22286.

United States Court of Appeals,
Second Circuit.

Argued April 9, 1952.

Decided June 25, 1952.

20, 1949 when a libel *in rem* was filed against the S.S. Cecil N. Bean to recover, upon a *quantum meruit* basis, for work on the vessel between December 7, and 14, 1949. No claimant appearing, there had first been an interlocutory decree for the libellant with a reference to a commissioner to ascertain the damages. The commissioner having found and reported that work had been performed by the libellant having a fair value of $2923.30, his report was confirmed and a final decree entered on January 10, 1950. This decree was vacated upon motion of the claimants, Drytrans, Inc., on January 18, 1950 and, counsel for both parties consenting, the cause was referred back to the same commissioner. The claimant's defense was that the work for which libellant sought to recover was partial performance of a written contract which the libellant had breached without justification, and a cross libel was filed for the amount the claimant alleged it had expended in excess of the contract price to complete the work required to be done under the contract. The commissioner filed his second report on April 27, 1950 in which he again found for the libellant in the amount of $2616.67, specifically finding that there was no written contract between the parties. Following that, the claimant moved to reopen because of evidence newly discovered. This motion was granted and, upon the libellant's motion, there was another reference to the same commissioner. After the taking of additional evidence, a third report was submitted by that commissioner on June 29, 1951 in which he found that there was a valid written contract covering the work done which the libellant had breached after performing in part and also that the claimant had not proved that it had paid more than the contract price to have the work completed. On November 23, 1951, the commissioner's third report was confirmed and the libel and cross libel were both dismissed. Only the libellant has appealed from this decree.

McNutt & Nash and James E. Freehill, New York City, for claimant-appellee.

Harry D. Graham, New York City, for libellant-appellant.

Before CHASE, MARIS and CLARK, Circuit Judges.

CHASE, Circuit Judge.

The final decree from which the libellant has appealed was entered after protracted litigation which began on December

■ . In part he relies for reversal upon the orders which kept the cause at hearing before the commissioner but we find

no abuse of discretion in respect to them.[1] We turn to questions raised concerning the finding that there was a contract between the parties covering the work done by the libellant, that this contract was breached, and that as a matter of law the libellant's breach precluded any recovery for the value of that part of the work which was done by the libellant.

██ Of course the findings as to the existence of the contract and its breach are to be given effect unless clearly erroneous. Rule 52(a), F.R.Civ.Proc., 28 U.S. C.A. As to both, there was substantial evidence in support. There were two conversations by telephone between the libellant and one Callimanopulis, an officer of the claimant. In the first conversation, Callimanopulis called the libellant in the afternoon of December 6, 1949 and told him that he had some general hold cleaning to be done on the S.S. Cecil N. Bean and asked for an estimate of the cost of this work. The libellant then examined the vessel and told him the price would be $3,000 to which Callimanopulis agreed. He asked the libellant to come in the next day to get written specifications of the work to be done. The next day the libellant signed a copy of the detailed specifications of what he was to do on the ship and began work in the No. 1 hold. On December 13th, the libellant delivered to the claimant a proposal to modify the agreement of December 7th by substituting a cost-plus-10% price for the $3,000 flat price in the contract.[2] When the claimant refused to agree to this proposal, the libellant took his men off the job and sent the following letter to the claimant:
"To the Owners of S.S. Cecil N. Bean Hellenic Lines,

25 Broadway
New York, N. Y.
Dear Sirs:
Please take notice that due to the erroneous estimate made on the night of the 6th of December 1949 for hold cleaning on the above ship and the mistakenly signed contract therefor of the following morning of the 7th December 1949, I am cancelling said contract at the expiration of the seven days mentioned therein for reasons that costs for such as are itemized in said contract are undeterminable.
Sincerely yours,
Marine Contracting Company
By (signed) Harry L. Harris"

At the time of this notice of termination, the libellant had completed, substantially, the work required in hold No. 1 but none of the work he had agreed to do in the other holds of the vessel had been done and his letter makes it clear that he then cancelled the contract because he found that he had made an agreement which was so improvident that he preferred its breach to its performance. His letter asserted justification for cancelling on the ground that the claimant sought to require him to do more work than the specifications called for is an obvious afterthought. As to this, the evidence was so conflicting that refusal to accept the libellant's version of the facts was clearly justified.

██ The substantial question thus presented is whether the libellant may recover on a *quantum meruit* basis despite such a breach of contract. "Few questions in the law have given rise to more discussion and difference of opinion than that concerning the right of one who has materially broken his contract without legal excuse to recover for such benefit as he may have conferred

1. They include the order vacating the decree entered on default; that reopening the case because of newly discovered evidence; and that permitting the claimant to amend its pleadings during the course of the second hearing. The default was stricken with the consent of the libellant. The order reopening the case for newly discovered evidence was well grounded. The amendment to the answer was merely a matter of form.

2. "For value received, it is hereby agreed

that the stipulation and agreement under date of 7th December 1949, relative to certain hold cleaning upon the s.s. Cecil N. Bean, is hereby modified to the extent that in consideration for the contractor's performance of the items in the specifications provided therein that the owners will pay said contractor his costs incurred thereby, plus ten per cent (10%) of said costs and the contractor will provide the owners with itemized bills, receipts and other evidences of his costs thereby."

922

on the other party by part performance of an indivisible contract * * *" 5 Williston, Contracts, § 1473 (Rev.Ed.1937). The general rule is that no such recovery can be had by one who has deliberately abandoned, or broken, his contract but the value of the work, less the damages caused by the default, can be recovered if the breach was merely negligent. Schwasnick v. Blandin, 2 Cir., 65 F.2d 354; Restatement, Contracts, § 357; Williston, supra, § 1475. Except for the attempted justification for his default, based on the claim that he had been required to do more work than called for in the specifications, which the commissioner and the court rejected, the only reason given for the breach was that contained in the letter to the claimant. That shows a willful default made without regard for the obligation imposed by the contract into which he had entered and, consequently, the libellant has no cause of action.

Decree affirmed.

CLARK, Circuit Judge (concurring in the result).

When a case starts going wrong there is probably little, if anything, an appellate judge can do to set things aright. In the present case we can perhaps console ourselves against concern for a possible partial failure of justice by the knowledge that libellant brought most of his troubles upon himself. I concur in the opinion on the main issue he attempted to raise and agree that he did enter into a formal contract by which he is bound. On two points only am I troubled. I am not sure but that the work actually done may have afforded some benefit to the claimant here, beyond all the latter's expenses, for which libellant should have recovery. And the case has resulted not merely in long delay, but in inordinate costs against the libellant—apparently totaling $2,200 already—for a reference to a commissioner which should never have been ordered in the first place. United States v. Kirkpatrick, 3 Cir., 186 F.2d 393. But as to the first point, libellant, notwithstanding the lengthy proceedings, gave no indication of any likelihood that he could prove a benefit against claimant's contention of expense caused. And as to the second, libellant was at least partially responsible for the nature and course of the proceedings below. Consequently I am constrained, albeit with some lingering doubt, to concur in the result.

One matter of wider interest than the fortunes of the parties deserves further mention. The opinion denies any relief to libellant for possible benefits conferred because his default under his contract was "wilful," and not merely "negligent." Those emotive words do often appear as claimed rationale in this troublesome field; but, as Professor Corbin has so clearly demonstrated, they are more valuable to characterize a result reached than to aid in decision. As he says of "wilful": "Its use indicates a childlike faith in the existence of a plain and obvious line between the good and the bad, between unfortunate virtue and unforgivable sin." 5 Corbin on Contracts § 1123, 1951. Here libellant's default was based on his conclusion—apparently sound—that his hurried night estimates were improvident. Is that business judgment wilful, whereas had he merely stalled completion, or otherwise been unbusinesslike, he would have been only negligent? I endorse Professor Corbin's view that we ought to reject these emotional grounds of decision and do what he demonstrates the courts tend to do in reality, namely, look to whether real benefit has been conferred or not. 5 Corbin, id. and notes 8, 10, and 11.