EXNER SAND & GRAVEL CORPORA-
TION, as owner of THE Barge FLOR-
ENCE E., Libelant-Appellant,

v.

PETTERSON LIGHTERAGE & TOW-
ING CORP., Respondent-Appellee.
No. 99, Docket 24748.

United States Court of Appeals
Second Circuit.

Argued Nov. 20, 1957.

Decided June 13, 1958.

Vincent A. Catoggio, New York City
(Purdy, Lamb & Catoggio, New York
City, on the brief), for libelant-appellant.

Edward L. Smith, New York City
(Kirlin, Campbell & Keating and James
Proud, New York City, on the brief),
for respondent-appellee.

Before HINCKS, LUMBARD and
WATERMAN, Circuit Judges.

HINCKS, Circuit Judge.

This is an appeal by the libelant, Exner
Sand & Gravel Corporation, as owner of
the Barge Florence E., from a decree
holding that the respondent, Petterson
Lighterage & Towing Corp., as charterer
of said barge, although concededly liable
in the amount of $525 for damage to the
barge's bow suffered in the course of the

charter, was not liable for bottom damage in the amount of some $11,000 sustained after redelivery of the barge or for side damage in the amount of some $7,000 first observed one week after redelivery. The facts are sufficiently stated in Judge Waterman's dissenting opinion.

### Bottom Damage.

■ It was stipulated that the bottom damage occurred five days after the charterer had redelivered the barge to the libelant at libelant's request and while the barge was in process of being drydocked for the repair of the bow damage caused by the respondent "under the circumstances and in the manner described in the opinion, findings of fact and conclusions of Galston, D. J." in the libel theretofore brought by Exner against John Swenson Drydocks (Exner Sand & Gravel Corp. v. Swenson) D.C., 110 F.Supp. 531, affirmed 2 Cir., 212 F. 2d 205. Merely because in that action the libelant failed to prove Swenson negligent in causing the bottom damage, it does not follow, of course, that the libelant is entitled to recover it from the respondent who had never had any control of the drydock and no control of the barge for the preceding six days.

The appellant formulates his principal contention by posing the following question:

"When a barge under charter concededly sustains damage for which the charterer is liable and that damage necessitates drydocking and during the course of that drydocking· after the termination of the charter, the barge sustains additional damage, is not the charterer liable for that additional damage, as in the case of one who tortiously inflicts bodily injury on another and the original injuries are aggravated by the malpractice of a treating doctor or hospital?"

We think the question imperatively requires a negative answer. Surely one who damages a rented vessel or other vehicle may not ordinarily be held for other damage done to it by another a week subsequent to its return to the owner while the vessel or vehicle is in a shop for the repair of the damage done by the bailee.[1] It may be true that the later damage would not have occurred "but for" the bailee's negligent act. And it may be true that it was foreseeable that the original damage would require repair in a drydock or garage. But it was not reasonably foreseeable that the course of repair in a drydock or garage would result in further damage. Harper and James, The Law of Torts § 20.5; Cleary Bros., Inc., v. Port Reading R. Co., 2 Cir., 29 F. 2d 495; The Glendola, 2 Cir., 47 F.2d 206, 208, certiorari denied sub nomine Standard Oil Co. v. Glendola S. S. Corporation (Glendola S. S. Corporation v. Standard Oil Co.) 283 U.S. 857, 51 S.Ct. 650, 75 L.Ed. 1463. The damage done in drydocking was not the *natural and proximate* result of the respondent's negligence in causing the bow damage. Cf. Cooley, Torts 69–71. Nor was respondent's negligence *a substantial factor in producing* the damage occurring when the barge was drydocked. Cf. Smith, Legal Causes in Actions of Tort, 25 Harv.L.Rev. 103, 223, 303, 309–310. It was not a *continuation of the active force* which caused the bow damage. Beale, The Proximate Consequences of an Act, 33 Harv.L.Rev. 633, 635. It was not a direct *physical consequence* of the negligence in causing the bow damage *which a reasonable man would have foreseen.* Winfield, Torts 71–72 (4th ed.1948). And, in view of the absence of serious threat to the general

---

1. It may be noted that where a barge settled on ice when the tide fell, the charterer was held not liable for the resulting damage. Sinram Bros., Inc., v. Reading Co., D.C.E.D.N.Y., 18 F.Supp. 109. Also "in the absence of unusual conditions, making the situation more than ordinarily hazardous, the barge demised for winter work may be towed in a broken-up ice field; if there be no negligence in the towing, damage caused by knocks from floating ice is chargeable to reasonable wear and tear." Dittmar v. Sargent, 2 Cir., 277 F. 237, 238.

security from the respondent's conduct in causing the bow damage, we hold that the bottom damage occurring in drydocking was not within the ambit of the risk created by the respondent. Pound, Causation, 67 Yale L.J. 1, 13 (Nov. 1957). In short, none of the successive tests in the history of legal causation which Dean Pound has sketched in the above-cited "article", when applied to the facts of this case, demonstrate that the causal relationship between the respondent's negligence and the bottom damage is such as to fasten liability on the respondent.

The appellant relies on a line of cases holding that a trespasser who has wrongfully caused personal injuries is liable for any aggravation thereof immediately caused, negligently or otherwise, by a physician in the treatment of the injuries, citing e. g., Texas & Pacific Ry. Co. v. Hill, 237 U.S. 208, 35 S.Ct. 575, 59 L.Ed. 918; Stephenson v. Steinhauer, 8 Cir., 188 F.2d 432; Wagner v. Mittendorf, 232 N.Y. 481, 134 N.E. 539, 20 A.L.R. 520.

We think such cases completely inapposite to the situation here. For Swenson's Drydock (which may be likened to the physician of the appellant's cases) was not repairing the bow damage when it damaged the bottom: the damage occurred, as it were, while the "patient" was entering the physician's office before any treatment whatever of its bow had been begun. None of the personal injury cases cited by the appellant hold the original tort-feasor liable for injuries to the plaintiff resulting solely from a fall (for example) by the plaintiff in the doctor's hallway, or while mounting the examination table, or from a taxicab accident on the way to the doctor's office—in short, for any aggravation suffered prior to actual treatment of the injury.

Moreover, libelant has cited no case applying this rule to property cases and the Restatement of Torts, § 457, expressly restricts the operation of the rule to "bodily harm." We think this limitation is sound. For the rationale of the rule, as expressed in the Restatement, finds its basis in the risks which in view of "human fallibility" are "normally recognized as inherent in the necessity of submitting to medical, surgical or hospital treatment." Id. § 457, comment (d.) Generally, when property has been damaged no such risk is "normally recognized as inherent" in the services of the repairman. Cf. Pound, Causation, supra, at page 13.

### Side Damage.

■ We find even less merit in appellant's claim for damage to the sides of the barge. It was found below, the appellant's protestations to the contrary notwithstanding, that the appellant had failed to sustain the burden of proving by a fair preponderance that the side damage occurred during the brief period of the charter. Certainly that finding was not clearly erroneous: indeed, there was no evidence as to how or when the side damage was sustained. So far as appeared there was no causal relationship at all between the respondent's conduct and the side damage.

Affirmed.

WATERMAN, Circuit Judge (dissenting).

I concur with my colleagues in holding that the appellee may not be held liable for the side damage suffered by the barge, for there is no evidence from which we may conclude that this damage was sustained either during the term of the charter or in consequence of a risk created by the appellee. I dissent, however, from so much of the majority's decision as denies libelant-appellant recovery for the bottom damage proved to have been sustained by the barge while it was being drydocked in order to undergo repairs made necessary by the appellee's conceded negligence.

The libelant, as owner of the barge Florence E., brought suit in the District Court to recover for damages sustained to the bow, bottom and sides of the barge during late January and early February 1948. By stipulation of

the parties the cause was referred, pursuant to Admiralty Rule 43, 28 U.S.C.A., to a commissioner who, after a hearing, rendered a report recommending that libelant recover for damage to the barge's bow planks. The report denied recovery for the bottom and side damage claimed by the libelant. To this portion of the report the libelant filed exceptions with the district court. The Court overruled the exceptions and confirmed the report, whereupon this appeal was perfected.

The pertinent facts follow. On January 29, 1948 the Florence E., then seaworthy, was orally chartered to respondent "under the usual New York form of harbor demise charter." Delivery was made to respondent at Pier 22, Brooklyn, where the barge was taken in tow by respondent's tug Bonn and brought to Pier F, Jersey City. She was then towed by respondent's steam lighter Atlantic to Lord's Drydock, New Jersey. Upon arrival at the latter point the bargee discovered that a bow plank had been damaged near the light water line, probably as a result of ice floes encountered during the journey.[1] An examination of the plank indicated that the damage was not substantial, and later that day the Florence E., together with another scow, the Cleary 78, was taken in tow by the lighter Pacific to pick up crated automobiles in Tarrytown. The Florence E., being towed bow first, was astern of the Pacific, and ahead of the Cleary 78. Two smaller tugs accompanied the tow. Their function was to clear a channel through floating ice in the river and through packed ice near the dock where the automobiles were to be loaded. When the flotilla reached the vicinity of the George Washington Bridge, the bargee aboard the Florence E., discovered that the bow damage was worse than had been realized and that the scow was leaking heavily. Thereupon, the Florence E. was placed astern of the Cleary 78, her stern first, thereby relieving her damaged bow from the pressure of the bow wave. The tow then proceeded to Tarrytown, but the ice between the river and the dock was so solidly and deeply packed that the tugs could not open a path; and the flotilla was forced to return to Lord's drydock. There the damage to the bow planks of the Florence E. was examined by the bargee and representatives of each of the litigants; and it was agreed that the respondent should redeliver the barge to libelant at Swenson's Drydock where libelant was to arrange for repairs. This redelivery was accomplished on January 30.

From January 30th to February 5th the barge was moored afloat in Morris Basin, along which Swenson's is located. The basin was in continuous use by other craft, and between February 2nd and 5th the Florence E. was moved three or four times. In addition, there was a considerable amount of ice in the basin. On the 5th of February, while the Florence E. was being placed in drydock cakes of ice lodged between the scow bottom and the drydock so that when the drydock was pumped out and the barge was being brought out of the water the ice penetrated the scow's bottom, thereby causing damage in excess of $11,000.[2] The following day, when the bottom damage was surveyed, additional damage was discovered on the side planks, both port and starboard. This damage is in excess of $7,000.[3]

1. The respondent concedes liability for this damage, the extent of which was assessed at $525 by the commissioner. This sum includes $459 for repairs and $66 demurrage.

2. The libelant herein brought suit against the owners of the drydock to recover for this damage but failed to prove the latter's negligence. Exner Sand & Gravel Corp. v. Swenson, D.C., 110 F.Supp. 531, affirmed 2 Cir., 212 F.2d 205.

3. The total cost of repairs for bottom, bow and side damage, considered separately, is $18,662; but since there are adjustments due to overlapping repairs, the libelant concedes that if it had successfully maintained all of its claims on this appeal, its award would have been limited to $15,247.

The libelant appeals from the failure to award recovery against the respondent for the bottom and side damage.

## I.

The report of the commissioner, confirmed by the district court and upheld by a majority of this court, denied recovery for the bottom damage on the ground that it had not been proximately caused by the conceded negligence of the respondent that resulted in the bow damage. I dissent from this conclusion because it seems to me to confine within too narrow limits the liability of a negligent actor for the consequences of his conduct.

There is logically required at the threshold of a determination of proximate causation a determination of causation in fact. A defendant is not liable for harm suffered by a plaintiff unless the conduct of the defendant in some measure caused the harm suffered. In the present case it is obvious that the negligence of the respondent that resulted in the bow damage to the scow caused the scow to be placed in drydock. The consequent damage to her bottom occurred during this drydocking, and would not have occurred if there had been no antecedent bow damage. Cf. Kirincich v. Standard Dredging Co., 3 Cir., 1940, 112 F.2d 163; Zinnel v. United States Shipping Board Emergency Fleet Corp., 2 Cir., 1925, 10 F.2d 47. However, the fact that the respondent's negligence when the bow planks were damaged was a causative factual link in the chain of events leading to the bottom damage does not necessarily establish respondent's liability for the bottom damage. To impose that additional liability upon the respondent, its negligence must be found to have been so closely connected with the bottom damage that the negligence may be said to be a proximate cause of that bottom damage. Intervening conditions or intervening conduct by a third party may relieve a negligent actor of the consequences of his act. This principle has received numerous formulations. Occasionally, the intervening conduct has been referred to as a "superseding cause";[4] or as making the antecedent negligence merely a "condition" of the plaintiff's harm and not a "cause" of it.[5]

Whatever the formulation of the principle, its source, as we said in Cleary Bros. v. Port Reading R. Co., 2 Cir., 1928, 29 F.2d 495, 498, "is to be found in the courts' conception of policy and fairness * * *" In that case barges which were lying moored to a pier were cast adrift as a result of what the court assumed to be negligence on the part of the respondent. Before any damage had been sustained by the barges, they were picked up by a third party and moored to another dock. The barges again went adrift, and this time boats and cargo were damaged. On these facts the court concluded that the respondent's negligence was not the proximate cause of the damage to the barges and their cargo, but, citing The Daniel McAllister, 2 Cir., 1919, 258 F. 549, the court clearly indicated that not all intervening conduct by third parties was of such a substantial nature as to break the causal chain connecting the defendant's negligence with the damage suffered by the plaintiff. Later decisions of this court, in accord with the generally accepted rule,[6] have also held that only under some circumstances will the intervening conduct of a third party relieve the original actor of liability.[7] Apparent conflict within our decisions[8]

---

4. Restatement of Torts § 440.

5. P. Dougherty Co. v. United States, 3 Cir., 1953, 207 F.2d 626; The Perseverance, 2 Cir., 1933, 63 F.2d 788. Additional formulations are contained in the opinion of Judge Hincks.

6. See Restatement of Torts §§ 440–441.

7. Fredericks v. American Export Lines, 2 Cir., 1955, 227 F.2d 450; Slattery v. Marra Bros., Inc., 2 Cir., 1951, 186 F.2d 134; Union Shipping & Trading Co. v. United States, 2 Cir., 1942, 127 F.2d 771; The Glendola, 2 Cir., 1931, 47 F.2d 206.

8. Compare the following opinions with those cited in footnote 7: Hansen v. E. I. DuPont De Nemours & Co., 2 Cir., 1929, 33 F.2d 94; Cleary Bros. v. Port Reading R. Co., supra.

is the result of attempts to formulate a general principle defining what intervening conduct will relieve a negligent actor of liability for damage logically related to his negligence. In Cleary the court stated that if the intervening conduct were negligent, the original wrongdoer should not be held liable "unless the * * * [intervening] negligence was such as the first wrongdoer might reasonably have expected to occur." 29 F. 2d 495, 498.

Within a few years the court found it necessary to explain—and perhaps to modify—the principle which had been formulated in Cleary. In The Glendola, 2 Cir., 1931, 47 F.2d 206, 208, we said that Cleary does "not hold that every intervening wrong excuses an earlier tort-feasor." We said there:

"We have indeed said at times that there cannot be 'two proximate causes' for a wrong, e. g., The Panther [2 Cir.], 5 F.2d 64, but in The George H. Jones [2 Cir.], 27 F.2d 665, 668, we explained that this was not to be taken as meaning more than that there may be occasions when the intervention of another conscious agent may be so unexpected that the actor charged with the initial omission should be held no longer liable. This is the doctrine laid down in Cleary Bros. v. Port Reading R. Co. and in Hansen v. [E. I.] Du Pont [de Nemours &

Co.]. It is the probability of the occurrence of the wrong which counts, not the fact that it is a wrong; its unlawfulness is material only in so far as wrongs are less likely to happen than other events."

Subsequent cases have accepted the principle that merely because there has been negligent intervening conduct by a third party the original actor is not exonerated thereby; and, though we have often referred to the foreseeability *vel non* of the intervening conduct, we pointed out in Slattery v. Marra Bros., Inc., 2 Cir., 1951, 186 F.2d 134, 136, that "what really matters is how far the first wrongdoer *should be charged with forecasting* the future results of his conduct * * *" (Emphasis added.) In this connection, it should be borne in mind that in the present case it is a stipulated fact that there is an absence of any proof indicating that the operators of the drydock were negligent.[9]

Perhaps the closest analogy to the situation before us is provided by those cases which hold a tortfeasor liable for aggravation of or additional injuries sustained by an injured party while being professionally treated for the injury which the tortfeasor has caused. See Restatement of Torts § 457. These cases are sought to be distinguished by respondent on the sole ground that they involve personal injury rather than damage to property.[10] The respondent sug-

---

9. By the stipulation annexed to the interlocutory decree pursuant to which the case was referred to the commissioner it was agreed that among the facts that the commissioner could take as having been proved at a trial was "That while said barge was being drydocked after redelivery * * * for repairs, it sustained further damage under the circumstances and in the manner described in the opinion, findings of fact and conclusions" rendered in Exner Sand & Gravel Corp. v. Swenson, D.C., 110 F.Supp. 531, see footnote 2, supra. The findings of fact and conclusions of law thereby stipulated to be agreed to as having been proved included the following pertinent finding of fact:

"The drydocking operation was carried out by experienced men with the degree

of care required of them. Cracking noises were heard as the blocks took the bottom of the scow, but the evidence fails to prove that it was of such an unusual nature as to have raised a duty in the respondents to stop the raising operation."

and the following conclusions of law:

"There was no known danger of which respondents were informed by libellant or otherwise, and against which they failed to guard.

"The libellant has failed to sustain its burden of proving that the drydocking operation was not carried out by experienced men with that degree of care required of them in their calling."

10. The majority also find these cases inapposite because of the fact that the

gests, and my colleagues point out, that there appear to be no decisions applying this rule to situations involving property damage. On the other hand they do not cite, and I have been unable to find, any cases rejecting the analogy.

Should principles of proximate causation vary according to whether recovery is sought for damage to property or injury to the person? Our prior decisions do not afford any basis for applying different principles of causation in cases involving property damage than in those involving personal injury, or in those involving both.[11] The policy considerations which have led the courts in personal injury cases to impose upon the original wrongdoer the burden of risk incident to treatment after injury should be equally applicable here. If, as Professor Prosser suggests, "It would be an undue compliment to the medical profession to say that bad surgery is no part of the risk of a broken leg,"[12] it would be similarly unrealistic to contend that there is no appreciable risk when a ship is being drydocked. Surely, the lodging of ice between the barge and the drydock was not such an improbable and independent cause as to break the sequence between the respondent's negligence and the bottom damage.[13] Fredericks v. American Export Lines, 2 Cir., 1955, 227 F.2d 450. The risk of damage was inherent in the situation, and the burden of assuming that risk was rightfully upon the respondent whose conduct created it.

## II.

I agree with my colleagues that there is no merit in the contention that the commissioner and the court below erred in denying libelant recovery for the side damage the Florence E. sustained. The commissioner found that the side damage did not exist when the barge went on charter. He also held that the libelant failed to prove that the scow was so damaged upon redelivery. In fact, there is no evidence in the record indicating how or when the side damage was sustained. In the absence of such evidence the commissioner was unable to make an affirmative finding of respondent's negligence. Although the libelant has failed to produce any direct evidence indicating when or under what circumstances the side damage was inflicted, it nevertheless contends that the side damage must have been sustained either during the charter term or during the layover for repairs at the drydock, and that, in either situation, the respondent is liable for the damage. It is quite clear that neither party contends the side damage occurred contemporaneously with the bottom damage. Proper analysis of libelant's contention requires separate consideration of the two periods

present case relates to property. In addition, they suggest that in the present case the bottom damage was not sustained during the course of "treatment" but when the "'patient' was entering the physician's office." There is no rational basis upon which to distinguish between damages incurred in the drydock while the barge was being placed there for repairs and damage inflicted after repairs had been begun, for the placing in the drydock was an integral part of the repair job at the place where the repair job was to be done. As pointed out by the majority, the personal injury cases cited by the appellant do not include cases holding the original tortfeasor liable for injuries sustained after the tortfeasor's negligent act and prior to actual treatment of the injury. However, here the aggravation of damage to the barge occurred at "treatment-time." The true parallel to the present situation is Illustration 2, § 457 of the Restatement of Torts, in which B, as a result of A's negligence, is injured and taken to a hospital and while there he is additionally injured because a nurse has placed an improperly stoppered hot water bottle in his bed. The Restatement holds that A's negligence is the proximate cause of the later harm additionally suffered by B.

11. Of the cases cited at note 7, the first two involve personal injury, the latter two concern property damage.

12. Prosser on Torts 362 (1941). See also, Thompson v. Fox, 1937, 326 Pa. 209, 192 A. 107, 112 A.L.R. 550.

13. See Restatement of Torts illustration, footnote 10, supra.

of time during which it claims the barge may have been damaged.

First, with respect to libelant's claims that respondent is liable as charterer despite an absence of affirmative proof of respondent's negligence. The respondent, as charterer of the Florence E., was not an insurer of her safety but was liable to appellant for damages caused by a failure to use reasonable care with respect to her, The Cedar Cliff, 2 Cir., 1945, 149 F.2d 964; The Roslyn, 2 Cir., 1937, 93 F.2d 278. Affirmative evidence of negligence being absent, the libelant, upon a showing that the chartered vessel was delivered by it in good condition and redelivered to it in damaged condition, is entitled to a presumption that the damage occurred under circumstances that would render the respondent liable. Alpine Forwarding Co. v. Pennsylvania R. Co., 2 Cir., 1932, 60 F.2d 734; Ira S. Bushey & Sons, Inc., v. W. E. Hedger & Co., 2 Cir., 1930, 40 F.2d 417. The burden of establishing the facts which give rise to the presumption is upon the libelant. The Roslyn, supra.

Therefore, the libelant can prevail only if it is able to establish that respondent was presumptively negligent, i. e., that the vessel was delivered in good condition and redelivered damaged. This libelant failed to do. The commissioner found that, although the damage might have occurred during the term of the charter, the libelant had not excluded the possibility that it might have occurred after redelivery while the barge was moored afloat in Morris Basin awaiting a drydock. These findings are assailed by the libelant on the ground that the commissioner and the district court required proof of respondent's negligence beyond a reasonable doubt, rather than the "preponderance of evidence" which is required in civil cases. Appellant misconstrues the findings below.

Immediately following his finding that the side damage did not exist when the barge went on charter to the respondent, the commissioner stated that

"The difficult question is whether the libelant has shown by a *preponderance of the evidence* that the side damage occurred during the three day charter period, and not at Swenson's Drydocks after redelivery of the scow." (Emphasis added.) To support its contention that the commissioner required a greater degree of proof, the libelant relies upon the statement by the commissioner that he could not "take the final step and find that the side damage could not have been sustained at the Swenson Drydocks * * *." Interpretation of this phrase as placing upon the libelant the burden of proving the side damage beyond a reasonable doubt is merely the result of seizing it from the context in which it appears. The commissioner having determined that the evidence as to whether the side damage was sustained during the term of the charter was inconclusive, then stated that the occurrence of the damage during this period might be established by proof that the damage did not or could not have happened while the barge was moored in Morris Basin. Here also, he found the evidence inconclusive and consequently concluded "that libelant has not shown by a preponderance of the evidence that the side damage was sustained while the scow was under charter to the respondent."

In effect, libelant's contentions concerning the burden of proof amount to no more than an argument that, upon the record before him, the commissioner could not fail to find that the side damage was sustained during the charter period. But the facts already stated are fully sufficient to indicate that the evidence in libelant's favor was not so overwhelming as to compel a finding for it. The District Court points out the significant fact that the bargee, though aboard the scow during the entire trip, was unaware of any damage to the side planks. In addition, there was a conflict of testimony as to whether the ice encountered by the Florence E. at any time during the charter period was sufficiently heavy to cause the side damage. Moreover,

as I have indicated above, the circumstances under which the barge was moored while awaiting a drydock made it not unlikely that she was damaged at that time. In short, the evidence in the record makes it equally as likely that the barge's sides were damaged after redelivery as before redelivery, with the result that the libelant has failed to sustain the burden imposed upon it by law, The Roslyn, supra. At least, the findings of the commissioner and the District Court to that effect were not so "clearly erroneous" as would justify us in reversing their determination. Harris v. The Cecil N. Bean, 2 Cir., 1952, 197 F.2d 919; Ozanic v. United States, 2 Cir., 1948, 165 F.2d 738.

Finally, if the side damage was not inflicted during the term of the charter, the libelant points out that it must have been sustained while the barge was moored afloat in Morris Basin awaiting a drydock. The libelant would, therefore, have us impose liability upon the respondent for the side damage for the reasons advanced with respect to the bottom damage. However, the circumstances under which the bottom damage was sustained were proved. Thus one can determine from the evidence that the bottom damage was a result of the risk created by the respondent's negligence. I have previously pointed out that, because these circumstances were proved, I would permit libelant to recover for that damage. I cannot reach a similar result with respect to the side damage because of the absence of evidence indicating how, where or when that damage occurred. As I have indicated above, I would not extend the liability of a respondent to all of the results which follow in a causative sequence from its negligence. Legal responsibility is limited to those consequences which are proved to have borne a sufficiently close relationship to the negligence that they are said to be "proximately caused" by it; and, pertinent to a determination of whether such a relationship exists, is the question of whether the damage resulted from a risk principally created by the respondent. Since there is no proof of how the side damage was sustained, the libelant has failed to prove that a risk created by the respondent caused that damage. Hence libelant has failed to sustain its burden of proving relationship between the respondent's negligence that caused the bow damage, and the side damage. Consequently, libelant should not be awarded anything for that damage.

I would reverse and remand for a computation of damages consistent with the content of this dissenting opinion.