372 A.2d 1273.

TOWN OF TIVERTON *vs.* FRATERNAL ORDER OF POLICE, LODGE #23.

POLICE DEPARTMENT OF THE TOWN OF TIVERTON, FRATERNAL ORDER OF POLICE, LODGE #23 *vs.* TOWN OF TIVERTON, RHODE ISLAND *et al.*

MAY 2, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

162

KELLEHER, J. These cases arise out of negotiations between the town of Tiverton (Tiverton or the town) and the Fraternal Order of Police, Lodge #23 (the police) concerning an employment contract for the year July 1, 1976 to June 30, 1977 and the inclusion therein of a new pension plan. We ordered the cases consolidated for oral argument.

On January 8, 1976, a representative of the police delivered to the Tiverton Town Clerk a letter requesting negotiations with the Tiverton Town Council concerning a new employment contract. The town replied that it would not honor the request because the letter was not received 120 days prior to the last day on which the town could appropriate money as required by G.L. 1956 (1968 Reenactment) §28-9.2-13. Tiverton claims that the "last day" was the day of the financial town meeting, scheduled for May 5, 1976, and that the notice given fell short

of the statutory provision by 1 day. On January 21, 1976, the police filed a complaint in Superior Court seeking an interpretation of §28-9.2-13 under the Uniform Declaratory Judgments Act, ch. 30 of title 9, as well as an order directing the town to negotiate. The next day they filed a charge with the State Labor Relations Board (SLRB) alleging unfair labor practices. No ruling was issued by the SLRB, but in due course the trial court issued its order interpreting the 120-day notice requirement of §28-9.2-13 as directory rather than mandatory; finding that notice was not given 120 days before May 5, 1976, but that it was nonetheless timely because given before the "last day," June 30, 1976; and ordering Tiverton to negotiate with the police. The town has appealed from that judgment.

Under protest, the town entered into negotiations with the police, and ultimately the matter was submitted to arbitration. In turn, the arbitration board awarded a police contract which included a pension plan to be effective on July 1, 1977. We granted certiorari to review the town's claim that the retirement benefits provided in the plan were invalid because it was to be implemented after the 1-year period covered by the award.

One argument Tiverton presents is that the Superior Court was without jurisdiction because the police had failed to exhaust their administrative remedies through SLRB. Insofar as the declaratory judgment dealt with statutory construction, this argument is without merit. The trial court had jurisdiction under G.L. 1956 (1969 Reenactment) §9-30-2, and this jurisdiction is not abrogated by the fact that other avenues of relief exist. *Berberian v. Travisono*, 114 R.I. 269, 332 A.2d 121 (1975).

The trial court had before him §28-9.2-13,[1] which provides that whenever matters requiring appropriation of money

[1]See Appendix.

164

are going to be the subject of collective bargaining, the bargaining agent must "serve written notice of request for collective bargaining on the corporate authorities at least one hundred twenty (120) days before the last day on which money can be appropriated by the city or town." Tiverton contends that the 120-day requirement is mandatory and jurisdictional, whereas the police maintain that the statutory provision is directory in nature, serving as a guide. The trial court adopted the latter position, but we disagree.

It is true that in *Providence Teachers Union, Local 958* v. *McGovern,* 113 R.I. 169, 319 A.2d 358 (1974), we interpreted a provision in an arbitration agreement requiring the arbitrators to call a hearing within 10 days of their appointment as being directory rather than mandatory. We observed that the sole purpose of the provision was "to secure order, system and dispatch" and that provisions of that nature are usually directory. *Providence Teachers Union, Local 958* v. *McGovern, supra* at 177-78, 319 A.2d at 364. It is also pertinent to note that in that case the directive was to persons acting in a public capacity, affecting the rights of others.

This case is different. Here, the purpose of the 120-day notice is not to regulate the flow of action, but rather to afford the town sufficient time to consider matters affecting town finances. Indeed, sufficient notice when money matters are in issue is the essence of §28-9.2-13. The general rule is that statutory requirements comprising the essence of a statute are mandatory. 2A Sutherland, *Statutory Construction* §57.03 at 416 (4th ed. Sands 1973).

Secondly, we recognize the general distinction between statutes aimed at public officers and those directed towards private individuals. In the former instance it is deemed preferable not to prejudice private rights or the public interest where the fault for delay rests with a public

officer. On the other hand, where a statute not only directs a private person to do things within a specified time but also conditions rights on the proper performance thereof, the statute is mandatory in nature and failure to comply is judged fatal. *Id.* §57.19 at 443-45. The statute in question is without doubt directed at private persons and, like an appeals statute, conditions rights thereunder on full compliance with the stated requirements.

Finally, we have observed that when determining whether a statute is directory or mandatory, we must ascertain the legislative intent. *Atlantic Ref. Co.* v. *Director of Pub. Works*, 98 R.I. 167, 200 A.2d 580 (1964). Admittedly, this is not always the easiest of tasks, but in this case the statute is phrased in terms of a minimum requirement: *at least* 120 days. The inclusion of this limiting language indicates to us that the Legislature intended 4 months as a bare minimum. To read this language as being directory would render the minimum requirement meaningless. As we have previously noted, "where one construction of an act of the Legislature operates to defeat an otherwise legitimate legislative intendment while another serves to support it, we will adopt the latter construction." *State* v. *Sprague,* 113 R.I. 351, 355, 322 A.2d 36, 38 (1974). For these reasons we construe the statute to be mandatory.

The police argue that even if the statute is mandatory, notice was proper because May 5, 1976 was not the last day Tiverton could appropriate money that fiscal year. Indeed, G.L. 1956 (1970 Reenactment) §45-3-6 provides a method for the calling of a town meeting "to transact any business relating to such town." The police theorize that a special meeting to appropriate money could have been scheduled for June 30, 1976, the last day of the fiscal year, in which case notice was more than sufficient.

We cannot agree. By statute, Tiverton's annual finan-

cial town meeting is set for the first Wednesday in May of each year (P.L. 1974, ch. 132). The statute is clearly designed for the ordinary course of events, promoting timely consideration of various financial questions and the adoption of a comprehensive budget. Section 45-3-6, on the other hand, while perhaps frequently invoked, is not the section under which the usual and fixed town meeting is held; this section provides for the extraordinary. Under §45-3-6 the town council or 10% of the electors[2] may request a special meeting, but this is limited further by §45-3-7, which provides that no special meeting may be called without the town council's consent if the subjects to be considered have been acted on by the town within 6 months prior to the time of the proposed call. Thus, there is no guarantee that one desiring a special meeting will be able to muster requisite popular support or win council approval in necessary instances.

Under the theory urged by the police, they could "give notice" 120 days before May 6 (after the town financial meeting), the town and police would spend days or weeks negotiating, and the matter might never reach a vote because of the inability to call a special town meeting. Given this contingency, it is highly unlikely that the Legislature, in drafting G.L. 1956 (1969 Reenactment) §28-9.2-13, intended the 120 days to run back from some unspecified, unascertainable time. Therefore, in order to give the section a reasonable interpretation, we conclude that "last day" as applied to Tiverton or any other municipality similarly situated is that day on which the financial town meeting is ordinarily held.

For the foregoing reasons, we find that notice was not timely and the town was not obliged to negotiate with the police on any issues falling within the purview of §28-

---

[2] This provision is further qualified in a manner not pertinent here.

9.2-13. Because of our disposition of the question on these grounds, we will not reach arguments Tiverton raises on the propriety of the trial justice's ordering negotiation.

The second major issue presented is whether the arbitration agreement is invalid because it directs implementation of the pension plan after the 1-year period covered by the award.[3] In *City of East Providence* v. *Local 850, Int'l Ass'n of Firefighters,* 117 R.I. 329, 366 A.2d 1151 (1976), we examined an arbitration award abolishing the age requirement for retirement with a pension. Recognizing that the board had "\* \* \* attempted to soften the impact by introducing the changes gradually over a five-year period," we nonetheless ruled that the proposed pension plan revisions were invalid insofar as they were to take effect after the period covered by the award. *City of East Providence* v. *Local 850, Int'l Ass'n of Firefighters, supra* at 340, 366 A.2d at 1157. The case before us is subject to the same pitfall.

Attempting to facilitate Tiverton's implementation of the new pension plan, the board stated:

> "The F.O.P.'s expert testified that the plan could not be implemented until July 1, 1977, and therefore, the award of this proposal shall be effective as of said date. The parties shall immediately undertake whatever is necessary to insure that the plan and its benefits are available to the members of the bargaining unit on that date."

The police urge that Tiverton is obliged to "undertake whatever is necessary" to ensure the plan's implementation, including adopting the plan *before* July 1, 1977 in order that the plan be operative on that date. We cannot agree. The board said in plain and simple English that

---

[3]Ordinarily, our decision on the notice issue would dispense with any need for further consideration. In this instance, however, because two distinct cases are before us, we will proceed to the issues raised by the certiorari petition.

the pension plan was to be effective as of July 1, 1977. Just as the notice to negotiate was 1 day too late, so also is the implementation date of the award. Therefore, the entire award as it pertains to the pension plan is rendered nonbinding.

The defendants' appeal is sustained, and the judgment below is vacated. The petition for certiorari is granted, the decision of the board is quashed, and the record certified is remanded to the board.

## APPENDIX

General Laws 1956 (1968 Reenactment) §28-9.2-13:

"Whenever wages, rates of pay, or any other matter requiring appropriation of money by any city or town are included as matter of collective bargaining conducted under the provisions of this chapter, it is the obligation of the bargaining agent to serve written notice of request for collective bargaining on the corporate authorities at least one hundred twenty (120) days before the last day on which money can be appropriated by the city or town to cover the contract period which is the subject of the collective bargaining procedure."

*Corcoran, Peckham & Hayes, Kathleen Managhan, Arthur W. Murphy,* for Town of Tiverton.

*Dolbashian, Chappell & Chace, Paul M. Chappell,* for Police Department of the Town of Tiverton, Fraternal Order of Police, Lodge #23.