DECISION
The case comes before this Court on the verified complaint filed by the plaintiffs, West Warwick School Committee, and the Interim-Superintendent of Schools of the Town of West Warwick School Department against the West Warwick Teachers Alliance, A.F.T. Local 1017, AFL-CIO, Donald E. Vanasse its president, Michael Trofi its vice president, Thomas T. Daley its secretary, and Robert C. Archambault its treasurer.
FACTS/TRAVEL OF THE CASE
The plaintiffs, West Warwick School Committee and James A. DiPrete, the Interim-Superintendent of Schools for the School Department of the Town of West Warwick, are charged generally, pursuant to G.L. 1956 (1988 Reenactment) § 16-2-1 et seq., with the operation of public schools in the Town of West Warwick.
Defendant West Warwick Teachers Alliance, AFT Local #1017, AFL-CIO (hereinafter Alliance or the Alliance) is the authorized bargaining agent for the certified public school teachers for the Town of West Warwick. The individually named defendants are the elected or appointed representatives of the Alliance.
On September 23, 1991, the parties to this action, with the exception of the Interim-Superintendent, entered into a contract (hereinafter Collective Bargaining Agreement or CBA), which by its express terms governed the relationship between the parties from September 1, 1991 through August 31, 1994. (See Exh. 2, full). The CBA contained forty-eight (48) separate Articles, including provisions such as Article 1 wherein the plaintiffs recognize the defendant Alliance as the exclusive bargaining agent for all certified public teachers of the Town of West Warwick and Article 4 entitled, "Grievance Procedure," wherein the purpose and procedure for grievance resolution is specified.
Article 47 of the CBA, entitled "Duration of the Agreement," provided that:
 "This Agreement and each of its provisions shall be in effect as of September 1, 1991, and shall continue in full force and effect until and inclusive of August 31, 1994. Negotiations for the subsequent Agreement will commence no later than November 1, 1993, or such earlier date, as required by statute, for all other items upon request of either party filed to (2) weeks before. However, there shall be an automatic option to extend this Agreement for one (1) additional year (September 1, 1994, and until and inclusive of August 31, 1995) upon the same terms and conditions except for: * * *."
The parties, anticipating that they would exercise the "automatic option" referred to above, agreed in a separate Article 47, entitled "Duration of Agreement," as follows:
 "In the event of the extension of this Agreement, then Article 47 shall be amended to read as follows:
 "This Agreement as amended and extended and each of its provisions shall be in full force and effect as of September 1, 1991, and shall continue in full force and effect until and inclusive of August 31, 1995. Negotiations for the subsequent Agreement shall commence no later than November 1, 1994, or such earlier date, as required by statute, for all other items upon request of either party filed two (2) weeks before. * * * Under this automatic extension option, either party may, by written notice to the other by certified mail return receipt requested, within ninety (90) days prior to September 2, 1992, exercise its right to terminate this option. Should either party exercise its right to terminate this option, the language of this Agreement shall remain as it is (was) on August 31, 1994."[1]
In Article 37, entitled "The Basic Salary Schedule," the CBA provided:
 "The basic salary schedule shall be determined as follows: (a) the first (1st) salary step will be calculated from the statewide step rank quarter of communities/public school districts using a ten (10) or less than a ten (10) step salary schedule. Specifically, the amount will be calculated by listing the step rank order of all other communities/public school districts using a ten (10) step salary schedule that have or will have settled and calculated by October 1. The exact first (1st) step is to be determined by taking the mean salary of the first (1st) actual yearly salary steps between the second (2nd) highest rank order community/public school district (not counting ties) and the third (3rd) highest rank order community (not counting ties). The resulting amounts will then be rounded off to the nearest dollar.
The provisions of Article 37 provided further for the salary steps between the second (2nd) and tenth (10th) salary step utilizing a similar process which was described above for the first (1st) step and refers expressly to certain school years.
The parties began negotiations prior to August 31, 1995, however, they were unable to reach an agreement as to a successor CBA. After thirty (30) days of unsuccessful negotiations they agreed to participate in "good faith mediation" (or so-called "interest arbitration") through the Department of Labor pursuant to G.L. 1956 (1995 Reenactment) § 28-9.3 cited "School Teachers' Arbitration Act" in § 28-9.3-16 (hereinafter referred to as STAA), specifically section 9 entitled, "Unresolved Issues Submitted to Mediation or Arbitration."
On September 19, 1995, defendants brought an unfair labor charge against plaintiff (ULP-5082) with the State Labor Relations Board (hereinafter referred to as SLRB) which alleged that:
 1. During negotiations for a successor contract, the West Warwick School Committee has continued to, and proclaimed that it will, illegally, wrongfully, improperly and unilaterally refused to recognize in full and implement all the terms and conditions of the 1991-95 collective bargaining agreement and related memorandums of agreement, all in derogation of R.I.G.L. § 28-7-13(5), (6), and (10) and related decisions.
 2. The ongoing refusal to bargain in good faith regarding compensation, benefits and working conditions, and announced refusal to adhere in full to the previously agreed upon and existing collective bargaining agreement is and will cause strife and unrest.
 3. The School Committee has announced it will refuse to abide by and comply with all of the terms of the 1991-95 collective bargaining agreement until such time as the parties enter into a successor collective bargaining agreement.
Based on these charges, the SLRB issued a complaint on January 19, 1996. (Exh. 7, full).
Defendants later filed before the SLRB another unfair labor practice charge against plaintiff on October 3, (ULP-5092), later amended on October 25, 1995, which alleged that:
 1. The School Committee, by its members, have interfered with the employee rights of equality, full freedom of association and designation of representatives as set forth in §§ 28-7-2 and 28-7-12 of the Rhode Island General Laws by directly approaching union members and interfering with the bargaining representatives and bargaining process. Sections 28-7-14 and 28-7-13 (3) and (10).
 2. The School Committee has failed to make a good faith implementation of an outstanding arbitrator's award. AAA File #10-390-0143-93 and § 28-7-13
(11).
 3. The School Committee and its agent have failed to hear or discuss a filed grievance. Section 28-7-13 (7).
 4. The School Committee continues the above complained of behavior. Section 28-7-13 (10).
 5. The School Committee has refused to bargain in good faith. Section 28-7-13 (6).
This charge filed by the defendants ripened into a complaint brought by the SLRB against the plaintiffs on January 19, 1996. (Exh. 5, full).[2]
The "good faith mediation" between the parties pursuant to G.L. § 28-9.3-9 continued until October 4, 1995, when the plaintiffs, declaring an impasse, sought to arbitrate the issue of teacher salaries for the year 1995-96 under the provisions of G.L. 1956 (1995 Reenactment) § 28-9.3-10. Later, on October 30, 1995, defendants made a "Demand for Arbitration" under the terms of the prior CBA for Arbitration with the American Arbitration Association. (Exh. A, full).
The "Statutory Arbitration", pursuant to G.L. §28-9.3-10, commenced on January 12, 1996. Plaintiffs filed this complaint seeking injunctive relief and declaratory judgment on January 23, 1996. The parties appeared before the Court on plaintiffs' request for a temporary restraining order, and after a hearing at which the Court considered the legal arguments of the plaintiffs as well as the legal arguments raised by defendant, including lack of subject matter jurisdiction, this Court granted a temporary restraining order on January 30, 1996, wherein the Court made findings that it had subject matter jurisdiction based upon G.L. § 8.2-13.1; that the Court found there was no dispute between the parties, that the collective bargaining agreement which had been in effect has expired; and that the Legislature has provided, pursuant to G.L. §28-9.3-1, et seq., a procedure to resolve collective bargaining disputes between a teachers' organization and a school committee when a collective bargaining agreement has expired. The Court specifically enjoined and restrained the defendants and each and every one of their agents, servants, and employees from participating, advancing, or seeking to advance any arbitration matter other than pursuant to G.L. § 28-9.3-10 relating to the imposition of a pay raise for the 1995-96 or succeeding school years. The matter was scheduled for hearing on a preliminary injunction on a later date.
On February 7, 1996, the hearing commenced on plaintiffs' application for preliminary injunction. Prior to taking testimony the Court considered and reserved decision on defendants' "Motion to Dismiss on the Grounds of `Mootness."' After taking testimony from the sole witness presented, the Court requested legal memoranda on the points raised by the parties.
I
The Superior Court, pursuant to G.L. § 8-2-13, has "exclusive original jurisdiction of suits and proceedings of an equitable character and of statutory proceedings following the course of equity." In addition to this general grant of jurisdiction, the Legislature has expressly provided in G.L. § 8-2-13.1 entitled "Retaining Equity Jurisdiction During Arbitration" that:
 "notwithstanding the existence of any agreement providing for the resolution of dispute, contract violations or grievances by way of arbitration or other statutory means, the Superior Court shall have equity jurisdiction to issue temporary restraining orders and injunctions to maintain the status quo as it existed prior to the action which is the subject matter of the dispute ending resolution of said matter through arbitration and/or statutory means."
As the facts unequivocally establish, at the time this action was filed the parties were attempting to resolve their differences through arbitration statutorily mandated by G.L. § 28-9.3-10.
Despite the unambiguous language in G.L. § 8-2-13.1, the defendants maintain that, based upon the Supreme Court's opinion in Warwick School Committee v. Warwick Teachers' Union,Local 915, 613 A.2d 1273 (1992), the ". . . [S]uperior Court does not have jurisdiction to hear the Plaintiffs' action for declaratory judgment."
In the Warwick School Committee case the facts were: (1) a dispute existed between the parties about what they had orally agreed to before entering into a written successor collective bargaining agreement; (2) the School Committee thereafter refused to sign the collective bargaining agreement and then unilaterally implemented different terms and conditions pending execution of the new contract which then led to the filing of an unfair labor practice charge with the SLRB; (3) from that charge the SLRB ultimately ordered the School Committee to execute the collective bargaining agreement; (4) the School Committee appealed that decision to the Superior Court [Famiglietti, J.] which reversed the SLRB decision;[3] (5) following the Superior Court decision, a job action by the teachers took place which resulted in an injunction issuing [Pederzani, J.] prohibiting the Teachers' Union and its members from engaging in a strike and ordering the teachers to return to work under the terms and conditions of the expired contract; the Supreme Court, in WarwickSchool Committee, held:
 "If a dispute should arise between the parties concerning the effect of the failure to enter into a new agreement and whether or not the terms and conditions of an expired agreement should be controlling pending the negotiation and execution of a new agreement, the tribunal to make such a determination is the State Labor Relations Board pursuant to G.L. 1956 (1986 Reenactment) chapter 7 of title 28 as specifically required by § 28-9.3-4. If the union should contend that the terms of an expired agreement should apply until a new agreement should be reached, its remedy would be to file an unfair labor practice complaint with the State Labor relations Board pursuant to the terms of § 28-7-13. The Superior Court would have jurisdiction only to review the decision of the State Labor Relations Board pursuant to § 42-35-15. In short, the Superior Court does not have original jurisdiction of the question to determine what, if any, agreement is in force between the committee and the union. Since the Superior Court does not have original jurisdiction of this question, it was beyond the power of the justice of the Superior Court to order the school committee to abide retroactively or otherwise by the terms of the expired agreement. Warwick School Committee, 613 A.2d 1273, 1276.
Unlike the Warwick School Committee facts, in the dispute before the Court the parties had commenced the process which brought them to the "statutory arbitration" pursuant to G.L. 28-9.3-10; the defendants do not claim that plaintiffs unilaterally changed the terms or conditions pending the execution of a new agreement nor does it seek to have the Court decide what agreement is in force between the parties. The facts are clear and the parties agree that the only CBA by its expressed terms expired on August 31, 1995.
Additionally, in this matter the plaintiffs request that the Court:
 (A) Issue a temporary, preliminary and permanent injunction to restrain the binding arbitration demanded by defendants having the illegal result of forcing the West Warwick School Committee to increase the salaries for teachers of the West Warwick School Department for the school year 1995-1996;
 (B) To order and direct defendants to withdraw their request for arbitration under Article IV of the CBA; and restrain and enjoin the Alliance from seeking to impose via arbitration, a salary increase for the 1995-1996 school year;
 (C) To order and require the Alliance to comply with the West Warwick School Committee's request for arbitration and to continue to attend all hearings under R.I.G.L. Sec. 28-9.3-10, 12;
 (D) That all decisions of a mediator or arbitrator pertaining to salary schedules for teachers of the West Warwick School Department be non-binding;
 (E) That, in the meantime until further order of this Court, grant the plaintiffs such other and further relief as this Court shall deem equitable, proper and just.
Plaintiffs further argue, against the defendant's lack of subject matter jurisdiction claim, that the recent decision inLime Rock Fire District v. Rhode Island State Labor RelationsBoard, 673 A.2d 51 (1996) "makes clear" that the State Labor Relations Board does not have the exclusive jurisdiction via an unfair labor practice complaint to resolve issues arising during contract negotiations prior to exhaustion of the statutory dispute resolution procedures.
The facts in Lime Rock reveal that the parties had begun the statutory arbitration mandated in G.L. § 28-9.1-1, Fire Fighters Arbitration Act (hereinafter referred to as FFAA). During the annual financial meeting the qualified electors rejected the budgetary recommendation of the District Fire officials and voted to substantially decrease the budget, resulting in the termination of fire fighter positions. Rather than pursue the mandate that ". . . any and all unresolved issues shall be submitted to arbitration" (G.L. § 28-9.1-7), the union filed an unfair labor practice charge with the SLRB. The Supreme Court held that, "[C]learly, the SLRB was without jurisdiction to consider the charge inasmuch as the specific mechanism for resolving disputes under the Fire Fighters' Arbitration Act is through arbitration." Lime Rock, 673 A.2d at 54.
This Court, by comparing, in pari materia, (see ProvidenceTeachers Union, Local 958 v. School Committee City of Providence,108 R.I. 444, 448-49, 276 A.2d 762, 765 (1971)), the pertinent language found in section 9 of the STAA,
 "Subparagraph A: In the event that the negotiating bargaining agent and the school committee are unable, within thirty (30) days and including the date of their first meeting, to reach an agreement on a contract, either of them may request mediation and conciliation upon any and all unresolved issues by the Department of Labor from any other source. If mediation and conciliation failed or are not requested, at any time after the thirty days either party may request that any and all unresolved issues shall be submitted to arbitration by sending the request by certified mail postage prepaid to the other party, setting forth the issues to be arbitrated." (Emphasis added).
with the language of the FFAA in section 7,
 "In the event that the bargaining agent and the corporate authorities are unable, within thirty (30) days from and including the date of their first meeting, to reach an agreement on a contract, any and all unresolved issues shall be submitted to arbitration." (Emphasis added).
finds there is a substantial similarity.
By comparing, in pari materia, the public policy statements contained in both the FFAA and the STAT, it appears that the intent of the Legislature was to provide a mechanism by which the parties address unresolved contract issues through either mediation or arbitration. It further appears that the unmistakable intent of the Legislature, as interpreted by our Supreme Court in Lime Rock, was not to resolve these disputes by resorting to the filing of unfair labor practice charges with the State Labor Relations Board.
In this matter, the plaintiffs, on October 4, 1995, made its "demand for arbitration" after the good faith mediation, which had begun prior to the expiration of the CBA, had failed to resolve certain issues. The fact that the defendants had filed their unfair labor practice charge with the State Labor Relations Board prior to the demand for arbitration is, in this Court's opinion, of no value to the defendants' position. Under the statute it is necessary to mediate before a demand for arbitration can be made. In Lime Rock, the court held the "SLRB was without jurisdiction to consider the charge inasmuch as the specific mechanism for resolving disputes under the Fire Fighters' Arbitration Act is through arbitration." Lime Rock,
673 A.2d at 54. By analogy, the SLRB is without jurisdiction in this matter because the specific method for resolving disputes under Section 9 of the STAA is through arbitration.
For these reasons, the defendants' motion to dismiss for lack of jurisdiction is denied.
II
The defendants' next argue that the motion to dismiss, pursuant to Rule 12(b)(1) of the Rules of Civil Procedure, should be granted on the grounds that the plaintiffs' demand for an injunction has been rendered "moot" based upon the voluntary withdrawal of the defendants' request for arbitration before the American Arbitration Association after the Court granted the temporary restraining order. (Joint Exhibit 1, hearing date 2/7/96).
While this Court does not dispute defendants' arguments that subject matter jurisdiction can be raised at any time and that a court having no subject matter jurisdiction cannot retain jurisdiction, over one hundred years ago, our Supreme Court ruled that:
 "It ought not be the power of a defendant in an injunction bill to oust the court of its jurisdiction by committing pendente lite, the very acts to prevent which the suit was begun, and such, we think is the law." Lewis v. North Kingstown, 16 R.I. 15, 17, 11 A. 173 (1887).
Here plaintiffs sought an injunction asking this Court to order ". . . defendants to withdraw their request for arbitration under Article IV of the CBA . . . ." On January 30, 1996, this Court issued a Temporary Restraining Order that in part restrained and enjoined defendants "from participating in, advancing or seeking to advance any arbitration matter relating to the imposition of a pay raise for the 1995-96 or succeeding years."
Thereafter, by letter dated February 6, 1996, the American Arbitration Association, wrote that ". . . by direction of the Union, the above entitled matter has been withdrawn from arbitration . . . ." This request was, in this Court's opinion, an attempt by the defendants during the actual progress of the suit to "prevent [that] which the suit was begun to oust the court of jurisdiction." Id.
As the plaintiff, in this Court's opinion, correctly argued "the voluntary cessation of illegal conduct does not moot an action for injunction if there is a possibility of recurrence, since otherwise the defendants would be free to return to their old ways." Home Placement Service, Inc. v. ProvidenceJournal, 573 F. Supp. 1423, 1427 (D.R.I. 1983), quoting Allee v.Medrano, 416 U.S. 802, 810-11, 94 S.Ct. 2191, 2198, 40 L.Ed. 2d 566 (1974).
For these reasons, defendants' Motion to Dismiss, pursuant to Rule 12(b)(1) of the Rules of Civil Procedure and predicated upon the grounds of mootness, is denied.
III
Defendants next argue that the Court should decline to rule on plaintiffs' request for declaratory judgment as the matter is not "ripe" for decision and thus would be rendering an "advisory opinion."
Our declaratory judgment statute "* * * does not license litigants to fish in judicial ponds for legal advice." GoodyearLoan Co. v. Little, 107 R.I. 629, 631, 269 A.2d 542, 543 (1970). Rather, its purpose "is to render disputes concerning the legal rights and duties of parties justiciable without proof of a wrong committed by one party against another, and thus facilitate the termination of controversies. In light of their highly remedial nature then, declaratory judgment statutes should be liberally construed; they should not be interpreted in a narrow or technical sense." Millett v. Hoisting Engineers' LicensingDivision, 119 R.I. 285, 291, 377 A.2d 229, 233 (1977).
The main prerequisite to successful prosecution of an action for declaratory judgment is the existence of an actual or justiciable controversy. State v. Cianci,496 A.2d 139, 146 (R.I. 1985). A conflict between a statute and a collective bargaining agreement is properly justiciable (Vosev. Brotherhood of Correctional Officers, 587 A.2d 913, 915 (R.I. 1991)), as is an issue of statutory construction (General Laws § 9-30-2), even when another adequate remedy exists.Town of Tiverton v. Fraternal Order of Police, 118 R.I. 160, 163, 372 A.2d 1273, 1275 (1977). "This statutory form of action leaves discretion with the trial court to grant or withhold declaratory relief, which discretion, of course, is not absolute and is subject to appropriate appellate review." Cianci, 496 A.2d at 146.
In this Court's opinion, the instant matter is within the scope of the Superior Court's jurisdiction under Rhode Island's Declaratory Judgment Act. General Law 1956 (1985 Reenactment) § 9-30-1 et seq.
IV
As discussed previously, in section I of this decision, the recent decision in Lime Rock concerning negotiations under the FFAA provides a basis for analysis of plaintiffs' request for declaratory judgment. While the defendants maintain that LimeRock "is a case of waiver" (Defendants' Reply Memorandum, April 15, 1996, p. 7) which, in effect, should be limited to its facts, this Court does not agree in full. Lime Rock clearly addresses, in part, the purpose and application of the FFAA and the jurisdiction of the SLRB.
Specifically, in Count II of its Complaint, plaintiffs ask that this Court
 "(A) Declare that any grievance or arbitration seeking a salary increase after the expiration of a CBA must be arbitrated pursuant to R.I.G.L. 28-9.3 et seq. and non-binding arbitration under § 28-9.3-12 is the sole and exclusive legal vehicle to determine salaries for certified public school teachers after expiration of the CBA.
 (B) Declare that any unresolved issues within the proposed CBA between the parties involving the expenditure of monies must be determined through R.I.G.L. § 28-9.3 et seq. which is not binding on monetary matters and any arbitration conducted in accordance with R.I.G.L. § 28-9 et seq. is in violation of statute and null and void.
 "(C) Declare that the expired CBA cannot be used as a basis for demanding binding wage arbitration in accordance with R.I.G.L. § 28-9 et seq.
 "(D) Determine that neither the West Warwick School Committee nor the West Warwick Teachers' Alliance can alter the salary levels after a collective bargaining agreement has expired.
 "(E) Declare that the salary formulae for all members of the Alliance shall remain at the same salary figures, under the salary formulae effective during the school year 1994-95, that is without any new calculations as to 1995-96 ranking.
 "(F) Declare that no contract is in force for the purposes of salary increases."
In its initial memorandum, defendants focus on the critical issue in dispute, "the salaries to be paid the teachers" during the 1995-96 school year. (Defendants' Memorandum, March 27, 1996, p. 12). Defendants maintain that the terms of the expired CBA extend into the 1995-96 school year, including specifically the salary step-rank formula. It is undisputed however that the parties have not extended the expired CBA in writing (Answer, paragraph 17) nor has either party suggested that there exists an oral agreement yet to be memorialized in writing which addresses the teachers' salaries in the 1995-96 school year. By its own terms and undisputedly, the prior CBA expired on August 31, 1995[4] and as a matter of law, a written contract between a recognized bargaining agent of certified public school teachers and the respective municipality shall not exceed a term of three (3) years. G.L. § 28-9.3-4. Specifically, as to teachers' salaries, the expired CBA by its terms in Article 37, entitled "Basic Salary Schedule," expressly provided for a step-rank formula for the 1991-92, 1992-93 and 1993-94 school years. (Exh. 2, p. 57). By a separate Article 37 activated upon the failure of either party to terminate the option to renew the CBA for the 1994-95 school year, the expressed step-rank formula was implemented for the 1994-95 school year. (Exh. 2, p. 68). Accordingly, there is no statutorily-imposed or oral or written agreement between these parties which pertains to the teachers' salaries for the 1995-96 school year.
Instead of recognizing the teachers' salaries as an issue in dispute thus relying solely on statutorily mandated conflict resolution of such unresolved issues pursuant to G.L. § 28-9.3 et seq., defendants maintain that, as a matter of administrative law, the terms of the step-rank salary formula from the expired CBA extend automatically into the future. Such an extension would potentially result in increased teachers' salaries for each succeeding school year.
While defendants accurately maintain that section 17 of the FFAA requires, unless either party proposes otherwise, that all contractual provisions of an expired fire fighters' contract "shall continue" in the succeeding contract, no such language appears in the STAA. Consequently, these parties are free to negotiate any and all contract issues. Disputed substantive terms that will be part of a new contract however must follow statutorily mandated arbitration. General Laws § 28-9.3 et seq.; Belanger v. Matteson, 115 R.I. 332, 345, 346 A.2d 124, 133, (1975), reargument den., 115 R.I. 942, 354 A.2d 419 (1975), cert. den., 96 S.Ct. 1466, 424 U.S. 968, 47 L.Ed.2d 736 (1976).
In this matter, plaintiffs, pursuant to G.L. § 28-9.3-9, made its demand for arbitration upon reaching an impasse in negotiations. Said arbitration began but is yet to be completed. This binding statutory arbitration may include issues ". . . involving the expenditure of money . . ." if the parties agree. General Laws § 28-9.3-12. However, here the parties did not agree to submit the salary issue to binding arbitration. Consequently, the salary issue continues unresolved.
Until the outstanding issues are resolved, the Court believes it is necessary to maintain the status quo between the parties. The Superior Court has equity jurisdiction to issue orders maintaining "the status quo as it existed prior to the action which is the subject matter of the dispute pending resolution of said matter through arbitration and/or statutory means." General Laws § 8-2-13.1. Applying the facts in this matter to the aforecited statute, the Court must define the status quo that is to be maintained. In the absence of a Rhode Island opinion defining the status quo to be maintained and relying on the evidence and arguments before it, this Court follows the reasoning of the Maine Supreme Court. In a case involving issues similar to this matter, that court referred to the status quo as "the terms and conditions of employment after expiration of [a] collective bargaining agreement." Board ofTrustees of University of Maine System v. Associated Colt Staffof the University of Maine, 659 A.2d 842, 844 (Me. 1995). The Maine Supreme Court held that the static status quo rule appropriately applied to public employer collective bargaining and meant that "wages existent at the expiration of a collective bargaining agreement were frozen . . . increases in wages [as] scheduled in the expired contract should [not] be extended beyond the expiration of that contract." Id. As stated above, Article 37 of the expired CBA expressly applied only to school years 1991-92 through 1994-95; there is no ongoing salary escalator clause. Applying the static status quo rule to the instant case, specifically to a salary step-rank raise, the teachers' salaries are frozen at the levels existing on August 31, 1995, the date that the CBA expired.
Based on the foregoing analysis and in response to the declaratory judgment specifically requested by the plaintiffs, this Court declares that:
 (A) Any salary increase after the expiration of the CBA must be arbitrated pursuant to G.L. § 28-9.3 et seq. Non-binding arbitration under said statute is the mandated route to resolve matters involving the expenditure of money, including salaries for certified public school teachers after the expiration of the CBA, unless the parties mutually agree to binding arbitration on monetary issues. General Laws § 28-9.3-12.
 (B) Any unresolved issues within a proposed new CBA between the parties involving the expenditure of money must follow G.L. § 28-9.3 et seq. which is non-binding on monetary matters, unless the parties mutually agree to binding arbitration on monetary issues. General Laws § 28-9.3-12.
 (C) Based on the expired CBA, a post expiration legally enforceable contractual right to demand binding wage arbitration under G.L. § 28-9 et seq. is nonexistent.
 (D), (E) and (F) As to a salary step-rank raise, neither the West Warwick School Committee nor the West Warwick Teachers' Alliance can unilaterally alter the salary levels existing on August 31, 1995, the date that the CBA expired. Based on the expired CBA, a post expiration legally enforceable contractual right to new salary calculations based on a 1995-96 ranking is nonexistent. Based on the evidence before the Court, since August 31, 1995, there is no contract in force for the purpose of increasing the Alliance members salaries via a step-rank salary formulae.
The Plaintiffs shall submit a proposed order which will be settled after notice.
[1] Neither party has suggested that the other party exercised this option to terminate the CBA.
[2] In a separate lawsuit, KC-96-0188, brought by the plaintiffs against all the defendants in this matter as well as the State Labor Relations Board, the plaintiff sought to enjoin the SLRB from proceeding on the hearings arising from the unfair labor practice charges in ULP 5082 and 5092. The Court initially granted a temporary restraining order to allow the plaintiffs to engage in limited discovery. This Court, however, on March 13, 1996, vacated the temporary restraining order and denied the plaintiffs' request for a preliminary injunction.
[3] Superior Court decision affirmed in Warwick Teachers'Union, Local No. 915, AFT AFL-CIO v. Warwick School Committee,624 A.2d 849 (1993).
[4] See pp. 2-3, supra.