DECISION
Louis Calenda and Debra Calenda ("Calendas" or "Appellants") appeal to this Court from a decision of the Town of Johnston Zoning Board of Review ("Zoning Board" or "Board"). In its ruling, the Zoning Board granted a special use permit to B. Maceroni and Sons, Inc. ("Maceroni Inc."), to construct a funeral home. This Court has jurisdiction of Appellants' timely appeal pursuant to G.L. 1956 § 45-24-69.
 I Facts and Travel
Caroline R. Malone and John F. Malone, Sr. ("Malones") are the owners of a parcel of real estate identified as Assessor's Plat 53, Lot 75 ("Property"), in the town of Johnston. The Malones intend to sell the Property to Maceroni Inc., so that Maceroni Inc. can construct a funeral parlor on the premises. Prior to completing the sale, however, Maceroni Inc. sought relief from the town of Johnston to enable it to build the funeral parlor in compliance with applicable laws. *Page 2 
The Johnston Zoning Ordinance ("Ordinance"), Article III Section A ("Section A"), sets forth the ten zoning use districts in Johnston.[1] The Ordinance defines a zoning use district as "the basic unit in zoning, either mapped or unmapped, to which a uniform set of regulations *Page 3 
applies, or a uniform set of regulations for a specified use." Ordinance, Art. II, Definitions (108). "Use Classifications" are listed as permitted, not permitted, or permitted only as a special use.
A "mortuary or funeral home" is permitted only as a special use in an R-7 district. (Ordinance, Article III, Section D, Table III D-1, Subsection 9, Service Business.) The Ordinance explains that a "special use may be granted by the Zoning Board under the standards and procedures outlined in Article III Section P and elsewhere in this Ordinance." Id., Section D (2). Section P requires the Zoning Board consider certain criteria before granting a special use permit. The criteria generally consists of finding that the special use will be beneficial to the area as well as the general welfare of the community.[2] The criteria does not specifically mention *Page 4 
anything about considering the descriptive provisions of Section A, although it does mention that the special use shall serve the purposes of the Ordinance and the Johnston Community Comprehensive Plan ("Comprehensive Plan").
On December 8, 2008, the Town Council of the Town of Johnston (Town Council) considered the request by Maceroni Inc. that the Town Council change the Property from an R-20 district to an R-7 district.[3] (Appellant's Memo, Aug. 17, 2009, Ex. 1, Ordinance 2008-17.) The Town Council granted the request, entitled Ordinance 2008-17, subject, however, to certain stipulations. Id. The stipulation pertinent to this appeal provided that "[n]o building permits shall be issued, only site work may take place, until the water and sewer lines are brought to the property and functioning to full capacity."Id.
On January 6, 2009, Maceroni Inc. realized that the pertinent stipulation was untenable and therefore filed a second application with the Town Council seeking the Town Council's adjustment of the stipulation. The Town Council, however, postponed making a decision on the *Page 5 
application until the Planning Board issued an advisory opinion as to whether the site plan for the funeral home met the requirements of the Ordinance. While awaiting a decision from the Town Council, Maceroni Inc. filed an application for a special use permit with the Johnston Zoning Board.[4] Maceroni Inc. requested the special use permit because the Ordinance permits funeral homes only in an R-7 district as a special use.[5]
(Ordinance, Table III D-1, Subsection Nine.)
Prior to a decision by the Town Council on the second application, on January 29, 2009, the Zoning Board held a public hearing on the special use permit application. Eight individuals testified in support of the application, while two testified in opposition. Among those testifying in support of the application were zoning board recognized expert witnesses in land use planning and engineering.
Specifically, certified land use planner Joseph Lombardo ("Lombardo") presented a report to the Board that represented his belief that the proposed funeral home met all the requirements of Section P of the Zoning Ordinance. Lombardo testified as to the goals and policies of both the Ordinance and the Comprehensive Plan and believed the funeral home suited both. He summarized the findings of his report, concluding that the proposed use "does meet the Goals and Policies of the Comprehensive Plan, it does meet the purpose statements of your Zoning Ordinance and, lastly, it does meet all of your review criteria for your Special Use Permit." (Jan. 29, 2009, Board Hr'g at 31.) *Page 6 
Additionally, registered professional engineer Brian Thalmann testified as to the sufficiency of the proposed septic system, well, and detention pond. He testified that a new well would be installed to service the funeral home, and answered the Board's questions as to where it would be located. Id. at 23. He also noted that wetlands did not exist on the location and that the services being provided would be able to account for the increases in storm-water runoff resulting from the additional impervious surfaces on the property associated with the building and parking areas.Id. at 23-24.
Judith Zimmerman-Reisch ("Zimmerman-Reisch") was the last qualified expert to testify at the hearing. A transportation engineer, Zimmerman-Reisch testified as to the potential traffic consequences resulting from the proposed special use. She testified that even assuming the funeral home reached its maximum capacity, thus assuming a "worst-case scenario" for traffic flow, that "adequate and safe access to a public street was provided, and the traffic generated by the proposed development will not have a detrimental effect on the public health or safety in the studied area." Id. at 47.
Neighboring property owner, Louis Calenda, and a Town Councilwoman testified in opposition to the application. Calenda asserted that the proposed use was against the regulations of an R-7 district because he argued an R-7 district required sewer and water services.Id. at 55. He was equally adamant that the proposed use violated the Comprehensive Plan, for the same reason that the funeral home did not have the required water and sewer services and because he believed the Comprehensive Plan did not allow commercial development in the area. Id. at 65, 80. He finally argued that the funeral home would be detrimental to his property because it would increase traffic and bring in other businesses that he believed did not belong in the residential area. Id. at 75 *Page 7 
On February 9, 2009, prior to the Zoning Board's decision on the special use permit, the Town Council held a hearing on Maceroni Inc.'s second application requesting a change in the stipulations issued in Ordinance 2008-17. The Town Council approved the request, changing the stipulation to state "[t]he property shall be used for a viewing parlor only and no embalming shall take place on the premises until water and sewer services are connected to the premises." (Appellant's Memo, Aug. 17, 2009, Ex. 2, Ordinance 2008-25.) The Town Council's decision, entitled Ordinance 2008-25, establishes the current zoning of the Property: an R-7 parcel with the stipulation allowing for embalming only if water and sewer services are connected to the Property. Id.
On February 24, 2009, the Zoning Board issued its decision on the special use permit based on the information it received at the January 29, 2009 public hearing. The Zoning Board found — after carefully examining the permit application and testimony — that the application was "good for the community of Johnston and its general welfare," and that it would not "result in or create a condition that will be inimical to the public health, safety, morals and general welfare of the community." (Feb. 24, 2009, Johnston Zoning Board Decision at 1.) The Zoning Board granted the special use permit, however, conditioned upon the stipulation that the "Town Council remove the stipulation regarding water and sewer" from Ordinance 2008-17, and that the "Planning Board give a second favorable opinion to the Town Council" of the site plan.[6] Id. *Page 8 
The Calendas timely appealed the February 24, 2009 Zoning Board decision on March 9, 2009. They contend that the Zoning Board issued a special use permit for Maceroni Inc. despite the fact that the application did not meet the conditions precedent for granting a special use permit as required by the Zoning Ordinance and the Comprehensive Plan because the funeral home does not have water and sewer services and the Comprehensive Plan does not allow commercial development at the Property's location. This Court has jurisdiction of Appellant's timely appeal pursuant to G.L. 1956 § 45-24-69.
 II Standard of Review
Rhode Island G.L. 1956 § 45-24-69(a) provides this Court with the specific authority to review decisions of town zoning boards. This Court's review is governed by § 45-24-69(d), which provides:
 (D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Judicial review of administrative action is "essentially an appellate proceeding." Notre Dame Cemetery v. R.I. State LaborRelations Bd., 118 R.I. 336, 339, 373 A.2d 1194, 1196 (1977); *Page 9 see also Mauricio v. Zoning Bd. of Review ofPawtucket, 590 A.2d 879, 880 (R.I. 1991). The deference given to a zoning decision is due, in part, to the fact "that a zoning board of review is presumed to have knowledge concerning those matters which are related to an effective administration of the zoning ordinance." Cohen v. Duncan, 970 A.2d 550, 561 (R.I. 2009) (quoting Monforte v. Zoning Bd. of Review of E. Providence,93 R.I. 447, 449, 176 A.2d 726, 728 (1962)).
Thus, this Court's review of a zoning board's factual findings is undertaken to ensure that a reasonable mind might accept them as adequate to support a conclusion. See Lischio v. Zoning Bd.of Review of N. Kingstown, 818 A.2d 685, 690 n. 5 (R.I. 2003);Caswell v. George Sherman Sand Gravel Co.,424 A.2d 646, 647 (R.I. 1981). Regarding questions of law, however, this Court conducts a de novo review. Pawtucket TransferOperations, LLC v. City of Pawtucket,944 A.2d 855, 859 (R.I. 2008). When interpreting an ordinance the same rules of statutory construction apply as apply when interpreting statutes. Town of North Kingstown v. Albert,767 A.2d 659, 662 (R.I. 2001).
 III The Special Use
A special use is "a regulated use which is permitted pursuant to the special use-permit issued by the authorized governmental entity." G.L. 1956 § 45-24-31 (57). Unlike a variance, which "contemplates a departure from the terms of the ordinance," a special use "contemplates a permitted use when under the terms of the ordinance the prescribed conditions therefore are met."Annicelli v. Town of S. Kingstown,463 A.2d 133, 137 n. 2 (R.I. 1983) (quoting Kraemer v. Zoning Bd.Review of Warwick, 98 R.I. 328, 331, 201 A.2d 643, 644 (1964)). A zoning *Page 10 
board cannot grant a special use permit that is not in conformance with the purposes and intent of the comprehensive plan and the zoning ordinance of the city or town.See § 45-24-42 (b)(3).
 The Zoning Board's Decision
The Appellants believe that the Zoning Ordinance and the Community Plan clearly establish that a funeral home is allowed in an R-7 district as a special use only if the funeral home meets the condition precedent that water and sewer service the funeral home. Specifically, Appellants cite to Article III, Section A (5) of the Ordinance (Section A). It provides, "ResidenceR-7 District. This district is composed of certain high density areas that are served by both public water and public sewers." Appellants believe Lindberg's Inc. v. Zoning Board of Review ofthe City of East Providence establishes that a zoning board cannot grant a special use permit in contravention of an ordinance requirement, and argue that Section A (5) is such a requirement. 106 R.I. 667, 262 A.2d 628 (R.I. 1970). Additionally, Appellants cite to the Comprehensive Plan, Chapters Five and Seven, which it argues provides further support that sewer and water are required in an R-7 district and that commercial development is inappropriate at the proposed funeral home site. Chapter Five of the Comprehensive Plan states that commercial development should not be permitted in the area contemplated by the funeral home. Chapter Seven states that "[d]evelopment in the areas not served by public water should remain more sparsely populated. . . . Denser zoning districts should require both public sewer and water services and be permitted only in areas where these facilities already exist." (Johnston Comprehensive Plan, Chapter 7-13 Services and Facilities.)
Maceroni Inc. counters that the decision of the Zoning Board must be upheld. Preliminarily, it notes that Ordinance 2008-25 establishes the current zoning district of the Property and that the Appellants did not challenge the Town Council decision within the *Page 11 
timeframe contemplated in G.L. 1956 § 45-24-71.[7] Therefore, it argues this Court's review is limited to the Zoning Board's decision on February 24, 2009, granting a special use permit for building a funeral home on the Property. Maceroni Inc. consequently argues that the Zoning Board had the authority to grant a special use permit because it acted consistent with both Ordinance 2008-17 and the amended Ordinance 2008-25. Moreover, Maceroni Inc. argues that neither the Ordinance nor the Comprehensive Plan ever required sewer and water service as a condition precedent to a funeral home in an R-7 district, regardless of Ordinance 2008-25. Rather, it suggests that the provisions Appellants' rely upon are merely descriptive and suggestive, but not mandatory requirements.
Our Supreme Court has observed that determining whether a statute is directory or mandatory is not the easiest of tasks. Town ofTiverton v. Fraternal Order of Police, Lodge No. 23,118 R.I. 160, 165, 372 A.2d 1273, 1276 (1977). To do so, a court must determine the intent of the drafters of the language.Id. Words such as "shall" or "must" are often used to convey the message that the intended passage is mandatory. SeeDowney v. Carcieri, 996 A.2d 1144, 1151 (R.I. 2010). The word "should," however, typically indicates a recommended course of action, but denotes a level of discretion.Qwest Corp. v. F.C.C., 258 F.2d 3 1191, 1200 (10th Cir. 2001);U.S. v. Maria, 186 F.3d 65, 70 (2nd Cir. 1999); Sabow v.U.S., 93 F.3d 1445, 1452 (9th Cir. 1996).
This Court determines that the Zoning Board's finding that granting the special use permit application was consistent with the Ordinance and the Comprehensive Plan and is not *Page 12 
affected by error of law. Primarily, Amended Ordinance 2008-25 specifically provides that Maceroni Inc. can operate a funeral home provided that "the Property shall be used for a viewing parlor only and no embalming shall take place on the premises until water and sewer services are connected." This amended ordinance unequivocally states the Town Council's intention to allow for a funeral home in an R-7 district. Moreover, neither Section A of the Ordinance nor the language in the Comprehensive Plan suggesting sewer and water should serve the area in which the Property is located is a condition precedent that the applicant must meet before the Zoning Board could grant the special use permit. A funeral home is conditionally permitted in an R-7 district, and if the intent of the Town Council in drafting either Section A of the Ordinance or Chapter Seven of the Comprehensive Plan was to require sewer and water serve funeral homes in an R-7 district, the Town Council would have said so in much clearer and obvious language.
Even assuming that the Town Council had not issued Ordinance 2008-25, the Zoning Board's interpretation that neither Section A of the Ordinance nor the relevant provisions of the Comprehensive Plan are mandatory conditions precedent that Maceroni Inc. must have met before the Board granted a special use permit was not affected by error of law, but rather was supported by the reliable and probative evidence in the record. The Board clearly considered, but ultimately rejected, the Calendas' argument that the funeral home violated the purpose of the Ordinance and the Comprehensive Plan, as required by Article 3, Section P(2)(e) of the Ordinance.
The record evidences the Board's efforts attempting to ascertain the meaning of the Section A provision mentioning sewer and water in an R-7 district. The Board observed that "an R-7 Zone is an area [that] generally or may be served by water and sewer . . . [but] I don't think that it `must' be served by water and sewer." (Jan. 29, 2009, Board Hr'g. at 101.) The Board *Page 13 
credited the testimony of Joseph Lombardo, the certified land use planner, who shared the Board's belief that an R-7 district did not require water and sewer services and testified that the specific proposed use of a funeral home would not necessitate water and sewer services because of the "intermittent" nature of the services provided by the funeral home. (Feb. 24, 2009, Board Dec. at 2.)
Lombardo provided further testimony as to why he believed granting the special use would not frustrate the purpose of the Comprehensive Plan. He noted that although a funeral home is a business, the fact that the Ordinance conditionally allows funeral homes, but no other commercial or service businesses, is indicative of the Town Council's intent to treat funeral homes differently than other businesses. (Jan. 29, 2009, Board Hr'g at. 75.) The Zoning Board noted Lombardo's testimony as to the funeral home's consistency with the Comprehensive Plan in its decision, highlighting Lombardo's belief that the Comprehensive Plan allowed for "flexibility," as well as "meaningful development" and "balance" within zoning districts and that the funeral home would enhance property values in the area and "precisely matches the anticipated use in the R-7 Zone." (Feb. 24, 2009, Board Dec. at 2.)
Appellants' assertion that a zoning board may not grant a special use permit that fails to meet a condition precedent of a town's zoning ordinance is not in dispute. In Lindberg's Inc., a town zoning board granted a special use permit to allow the applicant to erect and operate a gasoline station on his land. The land was located in a commercial zoning district, but the ordinance allowed for the operation of gasoline stations in such districts only by way of a special use permit. The zoning board granted the special use permit despite considering the specific provision in the ordinance that required special use permits "shall conform to Sections 32-12 to 32-25 . . . of this chapter." Lindberg'sInc., 106 R.I. at 670, 262 A.2d at 629. Notably, *Page 14 
Section 32-23 of the ordinance specifically provided that "filling station premises shall be located not less than two hundred feet from the premises of any . . . church or . . . cemetery."Id. at 670, 262 A.2d at 630-31. The proposed gasoline station was located within two-hundred feet of both a church and a cemetery.Id. at 670, 262 A.2d at 631.
Our Supreme Court overturned the zoning board decision. It acknowledged that a zoning board may use its discretion to permit deviations from ordinance provisions which are "merely regulatory of a permitted use," but determined that discretionary standard did not appropriately address the situation because the ordinance permitted the proposed use of the gasoline station only as a special use. Id. at 668, 262 A.2d at 629. The Supreme Court stated that the zoning board could grant a conditionally permitted use "only upon a showing that any conditions precedent to the grant thereof prescribed in the ordinance have been satisfied. It is settled that the standards set out in an ordinance prescribing conditions to be met, with respect to the grant of an exception prescribed therein, are conditions precedent to an exercise of the discretion of the board which must be satisfied prior to any affirmative action." Id. at 668-69, 262 A.2d at 629. The Court then noted the express requirements of the factors the zoning board must consider before granting a special use permit, quoting the mandatory language expressed by the word "shall" in requiring the permit meet the requirements of specific sections of the ordinance — sections which also had specific requirements expressed by the word "shall." Id. at 669, 262 A.2d at 629.
Linberg's Inc., however, is distinguishable from the present matter. In Lindberg's Inc., the ordinance the zoning board considered stated special use permits "shall" comply with a specific chapter, and the pertinent chapter stated gasoline stations "shall" not be located near churches and cemeteries. Use of the word shall in that case gave the zoning board no room for *Page 15 
discretion and conveyed the clear intent of the ordinance that the special use permit conform to the provision. Castelli v.Carcieri, 961 A.2d 277, 284 R.I. 2008 (observing no clear language to convey mandatory language than the word shall). This Court acknowledges that the conditions set forth in Section P of the Ordinance are conditions precedent that must be met before the Zoning Board grants a special use permit. Additionally, the mandatory requirements set forth in the remainder of Article III following Section D are conditions precedent that must be met and do not allow the Zoning Board to use discretion in granting a special use permit.
The provision appellants rely upon to suggest that sewer and water is a mandatory requirement in an R-7 district, however, does not contain the word shall. The general descriptions of the zoning districts in Section A are not mandatory rules that must be met as a condition precedent before the Zoning Board grants a special use permit. Section A of Article III rather just divides Johnston into ten districts, while the remainder of the Ordinance, and specifically, the remainder of Article III, provide for the rules and regulations for proceeding within each of the districts.
Moreover, when viewed in light of the other ten district descriptions and the remainder of Article III, it becomes apparent that the town did not attempt to provide regulations in Section A, but merely to establish and generally describe the ten zones. In re Request for Advisory Opinion fromHouse of Representatives (Coastal Resources Management Council),961 A.2d 930, 936 n. 8 (R.I. 2008) (noting statutory construction requires particular language to be viewed in broader context considering legal scheme as a whole). Section A merely establishes and describes the ten zoning districts in Johnston. Section B sets forth that the ten districts are shown on the Johnston Zoning Map, and Section C sets forth the rules for interpreting the boundaries of *Page 16 
the zoning districts. It is not until Section D that Article III begins to provide for the rules and regulations of uses within each district.
The descriptive — and not mandatory — nature of Section A is apparent by the language describing the other zoning districts. It speaks of where "development should logically expand," and "where residential development appears likely to occur." (Ordinance, Article III Section A (1) and (2.)) The Town certainly knew how to set forth mandatory requirements — indeed the Ordinance states that when used the term "`shall' is mandatory" — but notably chose not to do so anywhere in Section A. (Ordinance, Article II, Definitions-Introduction.)
Furthermore, Appellants' interpretation of the provisions of Section A as mandatory requirements would lead to inconsistent and potentially absurd results. Berman v. Sitrin,991 A.2d 1038, 1053 (R.I. 2010) (refusing to enforce statute which would lead to absurd result). Specifically pertinent to an R-7 district, as Maceroni Inc. argues, are several conditionally permitted uses which common sense dictates do not require sewer and water services; namely, the public utility uses specified in Subsection 5 of Table III D-I. Similarly, it cannot be reasonably argued that this Court would have the obligation to overturn a zoning board decision granting a special use permit to a vegetable stand provider in a General Business B-2 District who could not meet the alleged conditions precedent of the district because the vegetable stand does not "depend upon a great volume of vehicular and pedestrian traffic," but merely depends upon an above average volume of pedestrian traffic.[8] (Article III Table III D-1, Subsection 10, Retail Business.) *Page 17 
Similarly, the language of the Comprehensive Plan does not rise to the level of mandatory requirements. The word "should" is indicative of the discretionary tone the Comprehensive Plan takes.Qwest Corp. v. F.C.C., 258 F.2d 3 1191, 1200 (10th Cir. 2001);U.S. v. Maria, 186 F.3d 65, 70 (2nd Cir. 1999); Sabow v.U.S., 93 F.3d 1445, 1452 (9th Cir. 1996). Like Section A, the amorphous language of the Comprehensive Plan relied upon by the Calendas does not suggest an intent by the Town Council to prohibit the Zoning Board from granting a special use permit when the Town Council had already clearly established that such a use is conditionally permitted in the district. Moreover, the Zoning Board's reliance on the expert testimony that the Comprehensive Plan allows for "meaningful development" and "flexibility" is consistent with the purpose of the Comprehensive Plan. Although the Comprehensive Plan suggests commercial development "should" not be permitted where the Property is located, the commercial development the Plan mentions involves retail stores and gross retail sales. Indeed, the Ordinance does not allow for "Retail Business" in an R-7 district, but it does allow for the "Service Business" of a funeral home as a conditionally permitted use.[9] (Ordinance, Article III Table D-1, Subsection 9 Service Business, Subsection 10 Retail Business.)
 IV Conclusion
After review of the entire record, this Court concludes that the decision of the Zoning Board to grant the special use permit was not made upon unlawful procedure, affected by error of law, or clearly erroneous. The decision did not prejudice substantial rights of the Appellants. *Page 18 
Accordingly, the Appellants' appeal is denied, and the decision of the Zoning Board is affirmed. Counsel shall submit the appropriate judgment for entry.
[1] Section A provides:
"For the purposes of this Ordinance, the Town of Johnston is divided into the following zoning districts:
 (1) Residence R-40 District. This district covers a large portion of the Town into which urban-type development should logically expand as the need arises. This district is characterized by a commingling of open land interspersed with residential uses.
 (2) Residence R-20 District. This district is composed of certain quiet medium-low density residential areas of the Town plus certain open areas where similar residential development appears likely to occur.
 * * *
 (5) Residence R-7 District. This district is composed of certain high density areas that are served by both public water and public sewer.
 (6) Neighborhood Business B-1 District. This district is composed of certain land and structures used primarily to provide for the retailing of commodities classified by merchants as "Convenience Goods" such as groceries and drugs and the furnishing of selected personal services.
 (7) General Business B-2 District. This district is composed of certain land and structures to provide for the retailing of commodities and the furnishing of services which depend upon a great volume of vehicular and pedestrian traffic.
 * * *
 (10) Industrial I-L District. This district is composed of certain land so situated as to be suitable for light industrial development. The purpose of this district is to permit the operation of a limited number of industrial uses and heavy business uses that will be compatible with nearby residential and business districts."
[2] Article III, Section P states:
 "(1) An application for the issuance of a special use permit may be made by any person . . . by filing . . . an application describing the request and supported by such data and evidence as may be required by the Zoning Board. Table III D-1, Use Regulations, specifies the uses requiring special use permits in each district.
 * * *
 (2) In granting a special use permit, the Zoning Board shall require that evidence of the satisfaction of the following criteria be entered into the record of the proceedings:
 (a) That granting of the special use permit will be compatible with the neighboring uses and will not adversely effect the surrounding neighbors' use and enjoyment of their property;
 (b) That granting of the special use permit will be environmentally compatible with neighboring properties and the protection of property values;
 (c) That granting of the special use permit will be compatible with the orderly growth and development of the Town of Johnston, and will not be environmentally detrimental therewith;
 (d) That the best practices and procedures to minimize the possibility of any adverse effects on neighboring property, the Town of Johnston, and the environment have been considered and will be employed, including but not limited to, considerations of soil erosion, water supply protection, septic disposal, wetland protection, traffic limitation, safety and circulation;
 (e) That the purposes of this Ordinance, and as set forth in the Comprehensive Plan, shall be served by said special use permit;
 (f) That granting of the special use permit will substantially serve public convenience and welfare; and
 (g) That granting of the special use permit will not result in or create conditions that will be inimical to the public health, safety, morals and general welfare of the community."
Additionally, the following section, Section Q, grants the Zoning Board with the authority to apply "such special conditions that may, in the opinion of the Board, be required to promote the intent and purposes of the Comprehensive Plan and [the] Zoning Ordinance."
[3] A funeral home is not a permitted use in an R-20 district.
[4] The Malones joined Maceroni Inc. in applying for the special use permit. For the sake of convenience, however, this Court will refer only to Maceroni Inc. when discussing the permit application.
[5] Maceroni Inc. also requested a variance from Article III Section A (5) of the Ordinance in case the Zoning Board determined that sewer and water were required to serve the proposed use. Although the Zoning Board conditionally granted the variance, Marceroni concedes that the requirements to grant a variance were not met and thus, this issue is not before this Court.
[6] Although the Zoning Board decided to grant the special use permit after the Town Council approved Ordinance 2008-25, the Zoning Board did not refer to Ordinance 2008-25 in its decision. This likely occurred because the Town Council amended the Ordinance after the Zoning Board had held its hearing on the issue, and Ordinance 2008-17 was the appropriate zoning of the property when the Board held that hearing. The record does not reflect that the Zoning Board was aware of Ordinance 2008-25 when it issued its decision granting the special use permit.
[7] Section 45-24-71 (a) provides that "[a]n appeal of an enactment of or an amendment to a zoning ordinance may be taken to the superior court for the county in which the municipality is situated by filing a complaint within thirty (30) days after the enactment or amendment has become effective." Although it is true that Appellants did not directly contest the Town Council decision, this Court's analysis of the special use permit will consider the same issue: whether water and sewer service are a condition precedent to building a funeral home in an R-7 district.
[8] A fruit or vegetable stand is a specially permitted use in a B-2 district. Section A specifies that a B-2 district provides for the "furnishing of services which depend upon a great volume of vehicular and pedestrian traffic."
[9] Further demonstrating the unique nature of a funeral home is the fact that a funeral home is the only "Service Business" the Ordinance allows in an R-7 district. (Ordinance, Article III Table D-1, Subsection 9 Service Business.)